## ALONZO T. McMULLEN v. JESSE HOYT and ALFRED M. HOYT.

A licensed public carman, who carries on business on his own account, with his own capital, and his own wagons, horses, and servants, does not stand in the relation of servant to one who employs him to carry merchandise at an agreed price per package, so as to make the latter liable for the negligence of the servants of such carman.

APPEAL by the defendant from a judgment entered on the verdict of a jury at trial term.

This was an action for an injury sustained by the plaintiff, about nine o'clock in the evening of the 9th day of July, 1864, from being struck by a barrel of flour, which was being rolled from a truck in front of the defendants' store, No. 19 South street, over a skid extending from the truck to the store. When struck plaintiff was stepping over the skid.

The complaint substantially avers that the truck and skid belonged to the defendants, and that it was the defendants' servants who were unloading the truck, and who rolled the barrel in question over the skid, and that the injury was occasioned by the negligence of the defendants and their servants.

The defendants, by their answer, alleged that the truck and skid belonged to a licensed boss carman, who was employed by them to carry and deliver the flour into their store, for cartage to be paid therefor by the defendants; also that the truck and skid, at the time of the injury to the plaintiff, were in the possession and in the charge of the boss carman and his servants, by whom the flour was being unloaded from the truck, on the 9th.

On the trial it appeared that the plaintiff was struck by a barrel rolled over the skid by a man on the truck; that one end of the skid rested on the back part of the truck, and the other end was in the store. Before attempting to cross the skid, the plaintiff stopped on the stoop until a barrel passed over it, and then, in attempting to pass, he was struck by an-

other barrel, which the truckman threw on the skid while the plaintiff was in the act of passing.

The plaintiff testified that he noticed on the truck " J. H. & Co." (being the initials of the defendants' firm), in red letters on a white ground. He also testified that, in an interview with the defendants, within a few days after the injury, in which their attention was called by him to the injury, and the circumstances under which it had happened, one of the defendants said: " I will go round and see my carman," and "I will be back in a few minutes;" and that, on coming back, he said: "I have seen my carman, but, as usual, nobody knows any thing about it."

Upon the plaintiff resting his case, the counsel for the defendants moved for a dismissal of the complaint, upon the ground that there was no evidence of facts sufficient to warrant the finding under the pleadings that the relation of master and servant existed between the defendants and carman, which motion was denied, and the defendants' counsel excepted.

The defendants' evidence showed that the truckman was a licensed boss carman; that he owned several trucks, and hired men to drive them, and paid his men by the week; that he was under no contract for his time with defendants, but worked for any person who might employ him; that he owned the truck in question, and that Henry Sarles, the driver, and person who unloaded it, and rolled the barrel in question, was in his employment for wages paid by him; that he was engaged by defendants to carry the flour in question with his own team and men, from one of the docks to their store, and that he was to be paid four cents a barrel for the carriage and delivery; that he was personally present at the time of the delivery of the flour at the store on the evening in question; that he had no special arrangement with defendants; if they gave him work, he did it, otherwise he had other places to work, and that he had put the letters " J. H. & Co." on the truck out of compliment to the defendants; that he had another truck with the name " of S. Smith " on it; that he kept his carts near the defendants' store; that the flour was received, on the occasion in question, at the store door, by two persons who stood near

the store end of the skid, to catch the barrels, and roll them in the store; that defendants had no other relation to the truckman than such as any man has to a public drayman, or carman, whom he employs to do specific carting for him; and that he had done carting in that way for defendants for twenty years.

At the close of the evidence, the counsel for the defendants again moved for a dismissal of the complaint, on the ground originally urged, that there was no evidence to find that the relation of master and servant existed between the defendants and the carman; but that, on the other hand, it appeared that the barrel by which the injury was effected was rolled by a man on the truck, who was in the employment of Warren Cronk, a public licensed boss carman, who was the owner of the truck; and that it was done while Cronk was in the performance of a special contract made by him, with the defendants, to carry the flour from the dock, and to deliver it at defendants' store at an agreed price per barrel. The motion was denied, and the defendants' counsel excepted.

The judge charged the jury, among other things, that the question of fact for them to determine, so far as the evidence was in conflict, was whether the carman exercised a distinct or independent employment or business, and was employed by the defendants to carry the flour from the pier, and to deliver it at the store, at an agreed price, or an established rate, per barrel; or whether he stood to the defendants in the relation of servant, and was subject, as such, to the exercise of their control and supervision, in the performance of the service which he was employed to do. In the first case, the defendants would not be responsible for the negligent acts of the servants of the carman; but, in the other case, they would be liable. The judge then called the attention of the jury to certain "special circumstances" in the evidence, claimed by plaintiff to establish the relation of master and servant between defendants and Cronk; that Cronk had been employed by the defendants in a certain way, for a period of from ten to twenty years; that he was attached in such a sense to the house of defendants; that he kept his carts in the vicinity of their store; and that the initials of the firm were painted upon the truck.

The judge further said : " If you arrive at the conclusion that there was that relation," of master and servant, " existing, to which I have adverted as necessary to make the defendants responsible for the acts of Mr. Cronk, or the persons in his employment, you will be justified in the conclusion, from the existence of such a relation, that the defendants are responsible."

The defendants' counsel excepted to the submission by the judge of the length of time that the defendants had employed the carman, and the other circumstances referred to by the judge, as insisted on, as taking the case out of the rule as applicable to an ordinary case of employment of a carman by a merchant.

The counsel for the defendant asked the judge to charge :

" That, as the case stood on the evidence, there was no sufficient evidence of facts to warrant the finding that the relation of master and servant existed between the defendants and the carman, or his driver on the truck."

The judge declined so to charge, and the defendants excepted.

The jury found for the plaintiff damages to the amount of $750.

From the judgment entered on the verdict the defendants appealed.

*Cornelius Van Santvoord*, for appellants.

*Thomas Nelson*, for respondent.

By the Court.—Van Vorst, J.—The just and proper disposition of this case depends upon the true relation which existed between the truckman and the defendants, at the time of the happening of the injury to the plaintiff.

If the truckman was then the servant of the defendants, they would be liable for the consequences of the act in question, if it was the result of negligence on the truckman's part.

The master has always been held answerable in damages for an injury resulting from the negligence or want of skill by a servant in the performance of the master's business.

McMullen v. Hoyt.

The relation of master and hired servant is a familiar one, and rests altogether on the agreement of the parties, and gives rise to various rights and liabilities other than those sought to be enforced in this action.

The master has a general authority and personal control over the one who stands to him in the relation of servant. In fact he has a property in the service of those whom he thus employs, acquired by the contract of hiring. The master may maintain an action against one who imprisons the person employed by him for the loss of service. ( *Woodward* v. *Washburn*, 3 Denio, 369). Tested by these principles, it is manifest that the truckman was not the servant of the defendants in any sense to make them liable for his acts or omissions. They had no control over him, or of his time or services.

Had he failed to cart the flour from the dock to the store, defendants' remedy against him would have been an action for a breach of his contract to carry. If the flour had been lost or injured through any negligence on the part of the truckman in carting it to the store, the loss would have fallen on him, and he would have been liable thereupon to the defendants.

A person performing the work the truckman engaged to do for the defendants is not to be considered as their servant, but as one carrying on an independent business in the execution of which he employs others to aid and serve him.

When the injury occurred, the truckman himself was standing near. The negligent act was performed in his presence, and if any person is liable for the act of the man on the cart in rolling the barrel on the skid, it must be the truckman whose agent and servant he was.

By the strict application of the doctrine of *respondeat superior*, there is but one person who can stand in the chief or principal relation. It would be illogical to suppose that the man on the cart was the servant of two several masters, or that two distinct persons could be severally liable for an act of negligence on his part. In the case of *Milligan* v. *Wedge* (12 Adol. & E. 737 ; 1 Q. B., 714), a butcher employed a licensed driver to drive a bullock from Smithfield to his slaughter house, and the driver himself employed a boy to perform the

work. The boy performed his duty so carelessly, that the bullock, as he was passing the plaintiff's show-room, run into the shop and injured the plaintiff's premises and property. The injured party sued the owner of the bullock who was sought to be charged for the negligent act of the boy. But Williams, judge, on the trial, held that the boy was not the servant of the defendant, and the defendant had a verdict. The ruling of the judge in this case was unanimously affirmed by the court on an application to set aside the verdict.

A merchant who employs a licensed carman to do carting, at an agreed price per barrel or package, when the carman carries on his business on his own account, as a separate employment distinct from that of the merchant, with his own means and his own hired men, does not stand to the carman or his employees in the relation of master to servant, and is not responsible to third persons for injuries resulting from the negligence or misconduct of the carman or his employees in the performance of his undertaking with the merchant. (*Martin* v. *Temperly*, 4 Q. B., 298; *Deforest* v. *Wright*, 2 Mich. 368; *Overton* v. *Freeman*, 8 Eng. Law & Eq. 479; 11 C. B. 867; *Butler* v. *Hunter*, 7 Hurlst. & Nor. 826, 832; *Laugher* v. *Pointer*, 5 Barn. & C. 547; *Story on Agency*, §§ 453 a., 453 b., 454.)

When the plaintiff rested his case, the defendants moved for a nonsuit or dismissal of the case, on the ground that the relation of master and servant between the defendants and the truckman had not been established. The motion was denied.

This disposition made by the learned judge at that time was correct. For when the motion was made, the true relations of the parties to each other did not clearly appear.

There was some evidence on the subject, slight indeed, but *it* tended somewhat to show that the truckman was servant to the defendants.

It appeared that the initials of the defendants' name were on the cart; it was unloaded before the defendants' store, and the barrels were rolled over the skid to the store, and were then received by defendants' clerks, and one of the defendants had used the expression "my carman" to the plaintiff when addressed on the subject of the injury. This was some evidence

McMullen v. Hoyt.

for the consideration of the jury on the subject as to whether the defendants were not liable for the injury, and where there is any evidence the judge is not warranted in nonsuiting (*Labar* v. *Koplin*, 4 N. Y. 547).

But the testimony subsequently offered by the defendants established the true relations which existed between the defendants and the truckman. By this evidence it appeared that the truckman was employed to do this specific work for a compensation; he was to receive a certain sum per barrel; that defendants had no control over him or of the manner in which he performed the work. He used his own truck and men to perform the service.

It was proved beyond controversy that as well the truck and horses as the skid were the property of the truckman; the fact of the initials of the defendants' name being on the cart was satisfactorily explained.

The initials of the defendants' name being on the cart could not tend to make them liable for the injury, nor would the fact indeed that they were the *owners* of the vehicle render them liable, unless it was driven and controlled on the occasion in question by some person in their service, and drawn by their horses; neither of which circumstances existed (*Quarman* v. *Burnett*, 6 Mees. & W. 499). In *Weyant* v. *The New York & Harlem Railroad Company* (3 Duer, 360,) the plaintiff was thrown out of his wagon and injured in Canal street by a car belonging to the New Haven Railroad Co., and which was at the time passing on a track used by it; the horses which drew the car belonged to the Harlem Railroad Company, and the driver was in their employment. It was held in that case that the Harlem Railroad Company and not the New Haven were liable for the injury.

The circumstance that the truckman had done carting for twenty years for the defendants in any way could not give character to this particular work, for the performance of which he was specially engaged. If he had done carting in this way for the defendants for any length of time, it could not create the relation of master and servant between the truckman and defendants in this transaction.

There was nothing, it appears to me, for the consideration of the jury after the evidence was closed. And the defendants' motion for a dismissal of the complaint which was then renewed should have been granted. Whenever a verdict would be against the clear right of evidence, a nonsuit should be ordered at the trial (*Rudd* v. *Davis*, 7 Hill, 529; *Lomer* v. *Meeker* 25 N. Y. 361).

The evidence will not sustain this verdict. It should be reversed and a new trial ordered, costs to abide the event.

Judgment reversed.