ROBERT SANDIFER, Respondent, v. GEORGE T. LYNN, Appellant.

Kansas City Court of Appeals, January 30, 1893.

1. **Negligence:** RAPID DRIVING IN STREET. Driving at the rate of ten miles an hour, in violation of an ordinance, alongside of a street car, and without attempting to check the team when the car is being stopped, is negligence, and a defendant cannot complain of its being submitted to the jury.

2. ————: CONTRIBUTORY NEGLIGENCE, WHEN JURY QUESTION. Where-
the act charged to be negligence will admit of different inferences or
constructions, it is properly left to the jury, and in view of the rate of
speed horses are ordinarily driven in crowded streets, and the control
which is usually exercised over them, to determine what precautions·
are necessary to prevent being run over, is commonly a matter of fact
and not of law.

3. ————: ————: ————: VIOLATION OF ORDINANCE. Pedestrians-
about to enter the streets are not at fault in expecting that the
ordinances regulating the speed of a team will be observed.

4. **Principal and Agent:** FACTS CONSTITUTING THE RELATION.
Defendant became owner of certain city cab property, and took it to·
L., a liveryman, and agreed to pay a fixed price for board and the
expense of maintenance as well as for care, and wanted him to·
manage it and look after it, and if possible get the expense of·
maintenance out of it. *Held*, L. operated the property for defendant
and as his superintendent.

5. **Master and Servant:** FACTS CONSTITUTING RELATION FOR THE·
JURY. Defendant's superintendent did not engage the driver for any
definite time. He took the team out of an evening and on return in
the morning turned over to the superintendent all the earnings, and at
the end of the week he received one-third of what he turned in during
the week as compensation. When out he served anyone who chose
to hail him. The superintendent could dismiss him at any time and
directed when he could or could not take the carriage out. *Held*, it
was properly left to the jury to decide whether the driver was·
defendant's servant or not.

6. ————: ————: INDEPENDENT EMPLOYMENT. Several cases present-
ing the doctrine of independent employment are distinguished and
*Fink v. Furnace Co.*, 82 Mo. 276, and a Pennsylvania case are *held*
not applicable to the case the record here discloses.

7. **Evidence:** NEGLIGENT DRIVING IN STREET: ORDINANCE. In action
for injuries negligently produced by rapid driving of a team in the
street, an ordinance regulating the speed of teams is properly admitted
in evidence as bearing on the negligence of the driver and the·
contributory negligence of the plaintiff.

*Appeal from the Jackson Circuit Court.*—HON. C. O.
TICHENOR, Special Judge. ·

AFFIRMED.

*M. Campbell*, for appellant.

The court erred: (1) In overruling defendant's demurrer to evidence of plaintiff, which affirmatively proved that W. F. Clausen was not employed or controlled by defendant. Shearman & Redfield on Negligence, sec. 73; Cooley on Torts, 532; Bishop on Non-Contract Law, sec. 599; 1 Parsons on Contracts [3 Ed.] pp. 87, 88; The Law of Negligence (Deering), sec. 218; Wood on Master & Servant, sec. 281. And which, affirmatively, by plaintiff's own mouth, showed plaintiff casting himself under the horses' feet. Wharton on Negligence [2 Ed.] sec. 300; Beach on Contributory Negligence, secs. 7, 19; Beach on Contributory Negligence, sec. 162; Deering on Negligence, sec. 12; Shearman & Redfield on Negligence, secs. 25, 34; Bishop on Non-Contract Law, sec. 459; Cooley on Torts, 674; 2 Thompson on Negligence, sec. 3, p. 1148; Pierce on Railroads, 323. (2) By asserting in the first instruction given by the court of its own motion, that, if defendant permitted Litchfield to employ and control the driver, defendant is, without more, liable for that driver's negligent acts, thereby perverting all instructions given. *Corbin v. Mills Co.*, 27 Conn. 274; *Hofer v. Hodge*, 52 Mich. 372; *Stevens v. Armstrong*, 2 Seld. (N. Y.) 493; *Harrison v. Collins*, 86 Pa. 153; *Hale v. Johnson*, 80 Ill. 185; *Mound City Co. v. Conlon*, 92 Mo. 221; *Linday v. Mfg. Co.*, 4 Mo. App. 570. By assuming in the same instruction to determine for the jury the effect and meaning of the mode of payment of the driver—a weighty matter in the determination of the relationship among these parties. *Fink v. Furnace Co.*, 10 Mo. App. 67; *Railroad v. Reese*, 61 Miss. 581; *Arasmith v. Temple*, 11 Ill. App. 39; *Brophy v. Bartlett*, 108 N. Y. 632. (3) By refusing instruction 4, asked by defendant, although employment and

control of the driver form the only basis of defendant's liability. *Robinson v. Webb*, 11 Bush, 464; *Clapp v. Kemp*, 122 Mass. 481; *Sproul v. Hemingway*, 14 Pick. 1; *Andrews v. Bredecker*, 17 Ill. App. 213; *Boswell v. Land*, 8 Cal. 469; *Fanjoy v. Searles*, 29 Cal. 243; *Norton v. Wiswall*, 26 Barb. 618; *Paulet v. R. & W. R. Co.*, 28 Vt. 297. (4) Clausen was not Lynn's servant; nor is that relationship changed because part of the income of the team was placed to Lynn's credit on expenses. *Wright v. Terry*, 23 Fla. 160. (5) And it was plaintiff's "duty to look along the street to see if it was safe to proceed * * * and plaintiff should have been nonsuited" for neglecting it. *Barker v. Savage*, 45 N. Y. 191; *Cotton v. Wood*, 98 Com. Bench, 568; *Bigelow v. Reed*, 51 Me. 325; *Simons v. Gaynor*, 89 Ind. 165; *Baker v. Pendergast*, 32 Ohio St. 494; *Goshorn v. Smith*, 92 Pa. St. 435. It is an undisputed fact that, but for plaintiff's neglect of this duty, he could not have been hurt, and the court should have declared as asked. *Kelley v. Railroad*, 75 Mo. 138; *Barker v. Railroad*, 98 Mo. 50; *Hudson v. Railroad*, 101 Mo. 13; *Kelley v. Railroad*, 101 Mo. 67; *Boyd v. Railroad*, 105 Mo. 378.

*Lyon & Ryland* and *Peak & Ball*, for respondent.

(1) The instructions given as to what would constitute the driver a servant of defendant complied exactly with the law, and conformed to the universally recognized tests. *James v. Muehlbach*, 34 Mo. App. 512; *Speed v. Railroad*, 71 Mo. 303; *Annett v. Foster*, 1 Daly (N. Y.) C. P. 502; *Fell v. Mining Co.*, 23 Mo. App. 216, 225. (2) The trial court might well have gone further; and, since the facts are undisputed that the driver was employed by Litchfield, by defendant's authority, to work solely for defendant,

and the defendant had entire right of control over both Litchfield and the driver, in respect to these carriages, the court would not have erred had it peremptorily instructed that the driver was the servant of defendant. *Hall v. Railroad*, 74 Mo. 298, 302; *Russell v. Ins. Co.*, 55 Mo. 585, 594. (3) It is not the law, and no court ever said it was, that a street car passenger, before stepping from the car at a street crossing, is bound to look both ways along the street in search of recklessly driven vehicles, or be adjudged guilty of negligence. This plaintiff had a right to assume that drivers would comply with the law. He did as all other people do, and the jury, under defendant's instruction 8, found that he was not negligent. *Purtell v. Jordan*, 31 N. E. Rep. (Mass.) 652; *Jetter v. Railroad*, 2 Keyes (N. Y.) 154, cited and approved in *Baker v. Pendergast*, 32 Ohio St. 494; *Williams v. O'Keefe*, 9 Bosw. (N. Y.) 536; *Simmons v. Gaynor*, 89 Ind. 165; *Norton v. Ittner*, 56 Mo. 351; *Petty v. Railroad*, 88 Mo. 306; *Taylor v. Railroad*, 26 Mo. App. 336; *Ridings v. Railroad*, 33 Mo. App. 527; *Mauerman v. Railroad*, 41 Mo. App. 348.

ELLISON, J.—This case is for damages arising from personal injuries sustained by the plaintiff and caused by being run over by one of defendant's carriages. The judgment below was for plaintiff, and defendant has brought the case here.

The team was being driven by a hack driver, and one of the principal questions in the case is, was he defendant's servant? There are also two other questions discussed by the respective counsel, viz., negligence of the hack driver, and contributory negligence of the plaintiff. The accident happened, substantially, in this way: Plaintiff was riding on an open "gripcar" of one of the cable car companies of Kansas City, there

being a regular car attached to the grip. The driver came up alongside of the rear car, going at a rate of speed, which the evidence justifies us in saying, and the jury in finding, was ten miles an hour. The horses, as some of the testimony showed, were going in a lope or gallop. The car was stopped for plaintiff to alight. He stepped off into the street and was almost instantly struck and knocked down by the team. He was facing east while on the car, the car and team both going east. The team, coming up from the west, was behind plaintiff as he sat on the car seat.

That the driver was guilty of negligence, the evidence shows beyond any doubt. He was going at an extraordinary rate of speed, which perhaps would have been negligence any where on the streets of a city, but in this instance he was driving at this rapid rate alongside of a street car of passengers, knowing, as he must have known, of the probability of the car stopping at any moment to permit passengers to alight in the street. Added to this, he made no effort to check the horses as the car was being stopped. His effort, in this respect, being confined, as he states himself, to the moment he discovered plaintiff on the street. His statement on this point is as follows: "The car was running, and I was driving right along by the side of it, and the car stopped and I kept on going, and I never saw anyone getting off the car, and this man got off the car and I couldn't stop in time to keep off of him. The car had stopped. I must have been about the length of the team and carriage—about twelve or fourteen feet—from where the man got off. He had just got off and stepped about two steps off the car when I saw him. The horses were then right onto him.

"*Q.* Did you halloo to the man when you saw him? *A.* I don't think I did. I pulled on my lines just as hard as I could to stop the team, and hallooed at my horses. Some one on the car did halloo. I did not."

The driver's negligence was submitted to the jury, as a question of fact. If there was any error in this it certainly was not against the complaining defendant.

The contributory negligence of plaintiff was duly and properly submitted to the jury. The distinguished member of the bar who was selected to try this cause could not, nor can we, with any degree of propriety, say, as a matter of law, that plaintiff was guilty of negligence directly contributing to the accident. He had his coat collar turned up and his cap pulled down. His ears were so covered as to, in all probability, obstruct, to a degree, his hearing, though his vision was free. He was looking to the east and saw the way was clear. He did not look back of him to the west before getting off, and had not taken more than a step towards the sidewalk, after getting off, till he was struck. Where the act charged to be negligence will admit of different inferences or constructions, it is properly left to the jury to determine. *Taylor v. Railroad*, 26 Mo. App. 336. We cannot say (considering the nature and place of this accident) that plaintiff's act was accompanied with less care than ordinarily prudent men are accustomed to observe under similar circumstances. Whether a given act is negligent is to be largely determined by the surrounding circumstances as connected with the act. And the same caution and care to avoid a team and carriage on a city highway is not as necessary as to avoid, under the same circumstances, a steam carriage on a railroad highway. Prudent men are accustomed to observe a less degree of care to avoid teams on a city highway than they

would, under the same circumstances, to avoid cars on a railroad highway. This results from the well-known fact that vehicles on the street are customarily under the immediate command of the driver, and that horses are driven with less speed and under much quicker control than are steam engines. An examination of the case of *Norton v. Ittner*, 56 Mo. 351, will show that Judge NAPTON had such distinction in mind when he wrote the opinion in that case. The distinction was expressly pointed out by the supreme court of Massachusetts in *Purtell v. Jordan*, 31 N. E. Rep. 652, a case in many material respects like the one before us. After referring in this connection to accidents upon railway tracks, the court said: "But, in view of the rate of speed at which horses are ordinarily driven in crowded streets, and the control which is usually exercised over them, to determine what precautions are necessary to prevent being run over is commonly a matter of fact, and not of law."

But there is another distinct justification of the trial court in refusing to say that plaintiff was guilty of contributory negligence. It was clearly shown that the driver was driving his team at an immoderate speed. It was further shown that the city ordinance forbids any other "than a moderate gait." Plaintiff, therefore, was not at fault in expecting that this ordinance would be observed by hackmen. It was not incumbent upon him to expect that this municipal law was to be broken. *Williams v. O'Keefe*, 9 Bosw. 536; *Baker v. Pendergast*, 32 Ohio St. 494; *Simmons v. Gaynor*, 89 Ind. 165. The opposite rule would make it necessary for pedestrians, about to enter upon streets, to be on the alert for all manner of recklessness, even to horse racing. In this instance plaintiff did not see the approach of the team. If he had noticed its

reckless handling, and yet put himself in its way, a different question would be presented.

This brings us to a consideration of the relation of one Litchfield with defendant. The facts are that defendant came into the ownership of a line of hacks and teams, and that he had no experience in running such business and wished to dispose of them. He placed the outfit with one Litchfield, a livery man in Kansas City, for board and keeping, agreeing to pay him a certain fixed price for the board of the horses and the expense of maintaining the vehicles, as well as a certain price for their care. Litchfield was to operate the line for defendant and to apply the proceeds arising therefrom, less expense of operating, to the board of the horses and keeping up the harness and vehicles. Defendant said that "I wanted him [Litchfield] to manage it and look after it, and if possible get the expense of maintenance out of it." Litchfield stated that defendant came to him and stated that he had come into the possession of property that had formerly belonged to the Kansas City Cab Company, and wanted him to board the horses and take charge of the rigs and to "let them out in the usual manner to the best advantage I could for him." It seems that Litchfield's compensation was included in the price he got for the board of the horses and care of the vehicles. He stated that he had charge and superintendence of the property for defendant. Taking the whole testimony of either defendant or Litchfield separately, or together we think there is no doubt but that Litchfield operated the property for defendant, and as his superintendent. Counsel have emphasized certain expressions of each as showing a different state of case, but these isolated expressions, or, in some instances, expressions of conclusions, do not alter the clear and evident meaning of their whole testimony.

Vol. 52—36

But the further inquiry remains regarding the status of the driver whose immediate act caused the injury. Litchfield was defendant's agent or superintendent. But did the arrangement with the driver make him so independent of either the defendant or Litchfield as to prevent his being their servant? There was evidence tending to show that the driver was not engaged by Litchfield for any definite time; that he took the team and carriage out of Litchfield's stable of evenings, would run all night and turn in the earnings on each following morning, and at the end of the week he would receive of Litchfield one-third of what he had turned in during the week; this one-third of the earnings was his compensation; when out with the carriage he served anyone he chose who hailed him; that Litchfield could dismiss him at any time he saw fit, and could say when he could, or could not, take out the carriage. Under evidence of the foregoing tendency we are of the opinion that it was proper to submit to the jury, as was done by the court, the question whether the driver was defendant's servant notwithstanding he received a certain share of the earnings of the carriage as his compensation. The driver was not engaged in an independent employment. The carriage and team were furnished and maintained by Litchfield for defendant. The driver's use of the team, the time when he should use it, and the employment itself, were at the pleasure of defendant. For it makes no difference that Litchfield was an intermediary. *Quarman v. Barnett*, 6 M. & W. 508. The money he earned was defendant's money, and he turned it in to defendant on daily reports. The fact that he received, at the end of the week, an amount equal to a third of such earnings, as his compensation, cannot have the effect to destroy the relation of master and servant otherwise established. Nor can we see how the matter is affected by

the fact that when he was at large in the city he controlled the team and governed his own movements in serving the public. The very necessity of the business in which he was employed would explain and cause that; and, notwithstanding this, he was but the agent and servant of defendant in carrying on the business of operating the carriages into which defendant, as before explained, had embarked. In operating this business it was as necessary to have a driver as it was the carriages themselves, and defendant is as much liable for the negligence of the driver as he would have been for the viciousness of one of his horses or a negligent defect in one of his carriages, had an injury happened by reason of either of these things.

As before stated, the driver was by no means engaged in an independent employment, as was the case of the licensed driver whose servant carelessly drove a bullock through the streets for the owner, in *Milligan v. Wedge*, 12 Adol. & E. 737; and as was the case of the drayman in *DeForrest v. Wright*, 2 Mich. 368; or the truckman in carrying merchandise, as in *McMullen v. Hoyt*, 2 Daly, 271; or yet the jobman who furnished a team and driver to two ladies to be attached to their own carriage, as in *Quarman v. Barnett*, 6 M. & W. 499. A consideration of those cases will show them to be altogether consistent with the position we take on the facts of this case.

Counsel for the defendant has cited us to some cases of which *Fink v. Furnace Co.*, 82 Mo. 276, and *Harrison v. Collins*, 86 Pa. St. 153, may be taken as types. We do not consider that those cases are at all applicable to the case the record here discloses.

The ordinance of Kansas City regulating speed at which vehicles may be driven was properly admitted in evidence as to the driver's negligence, as a violation of such ordinance is negligence *per se*. *Karle v. Railroad,*

55 Mo. 476; *Bergman v. Railroad*, 88 Mo. 678. And it was furthermore proper, as heretofore shown, as bearing upon the question with the jury as to plaintiff's contributory negligence; since plaintiff, in not looking behind him when about to step off the car, had a right to assume that the city ordinance in regard to reckless driving, would be obeyed. *Petty v. Railroad*, 88 Mo. 306.

The instructions refused for defendant were properly refused. Numbers 4 and 5 were evidently meant to convey to the jury the idea that this defendant himself must have hired and controlled the driver as distinguished from his superintendent. Numbers 6 and 7 we believe not to have been justified by the evidence.

We do not discover any error in the trial of the cause justifying our interference with the judgment, and it is accordingly affirmed. All concur.