Steube v. Iron & Foundry Co.

FRED STEUBE, Respondent, v. CHRISTOPHER & SIMPSON ARCHITECTURAL IRON AND FOUNDRY COMPANY, Appellant.

St. Louis Court of Appeals, November 20, 1900.

1. Practice, Appellate: EVIDENCE: INFERENCE: DEMURRER TO EVIDENCE. Where at the close of plaintiff's case the defendant offers a demurrer to the evidence, the appellate court is bound to assume that the plaintiff's evidence is true, and laying aside the controverting evidence of defendant, give to that of plaintiff every favorable inference which may be reasonably and fairly drawn from it.

2. ———: ———: VERDICT: EVIDENCE. And before the verdict of a jury can be set aside by an appellate court it should appear that there is no evidence to support it, or that it is the result of passion, prejudice or misconduct of the jury.

3. ———: ———: ———: ———. Mere insufficiency of the evidence is not sufficient to set aside a verdict.

4. Negligence: VICE-PRINCIPAL: FELLOW-SERVANT. Whenever the negligent servant can be fairly said to take the place of the master and to represent him, he becomes the vice-principal and the master should be held liable for his negligence.

5. ———: ———: ———: MASTER, DUTY OF: DELEGATION OF SUPERINTENDENCY. From the nature of the work in which the men were engaged in the case at bar, being ordered from place to place on the work and to different work, and from its hazardous nature, it was the duty of the master to superintend it. His obligation to superintend the work was such that he could not shift it by delegating the oversight of the workmen and the work to an employee, who in all other respects would be a fellow servant.

6. ———: ———: ———. In the case at bar, the situation as disclosed by the evidence makes John Miller vice-principal and the defendant is responsible for any injury incurred through his negligence while superintending and directing the work.

7. ———: ———: ———: JURY: REASONABLE DOUBT. Where there is some evidence of negligence, or where the facts leave the question of negligence in reasonable doubt, the question of negligence should be submitted to the jury.

Appeal from the St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED.

*Percy Werner* for appellant.

(1) The uncontradicted evidence shows that plaintiff was hired by and in the employ of Fred. Laun, an independent contractor, and not in the employ of defendant, at the time he was injured. Fraud will not be presumed, but must be shown by clear evidence, and acts which consist as well with honest and fair dealings as with a fraudulent purpose will be referred to the better motive. Robinson v. Dryden, 118 Mo. 534; Page v. Dixon, 59 Mo. 43. (2) The evidence wholly fails to establish the charge of negligence. Negligence consists in doing something which a reasonably prudent man would not have done under the circumstances, or in failing to do something which a reasonably prudent man, under the circumstances, would have done. McMahon v. Pacific Exp. Co., 132 Mo. 641. Ordinary care is such care as a person of ordinary prudence and caution, according to the usual and general experience of mankind, would exercise in the same situation and circumstances as those of the person whose conduct in that regard is in question. Lloyd v. Railway, 128 Mo. 595. (3) Even on the theory

VOL. 85 app—41

that plaintiff was in the employ of defendant, and that he was injured by reason of the negligence of one John Miller, also in defendant's employ, there could be no recovery because John Miller and plaintiff were fellow-servants. Grattis v. Railway, 153 Mo. 380.

*Johnson, Houts* and *Marlatt & Hawes* for respondent.

(1) John Miller was not a fellow servant of plaintiff, but was a vice-principal of defendant. Counsel argues that because some of defendant's witnesses called John Miller, a pusher, or straw-boss, he ceased to be a foreman or vice-principal, and became a fellow servant of plaintiff. He thinks there is something in a name, and evidently does not agree with Juliet that, "that which we call a rose by any other name would smell as sweet." As to what constitutes a vice-principal, Judge Marshall in the late case cited in defendant's brief, Grattis v. Railway, 153 Mo. 380, says: "The rule now is that it is a question of authority to represent a master which determines the question as to whether a person is a vice-principal." The evidence shows clearly that John Miller had full authority. Laun himself says: "I gave Miller instructions as to how to do the work, and left him as my straw-boss to carry them out." And John Miller says that Laun gave him full instructions as to how the stack was to be raised. No instructions were given to the men on the work, but all directions passed through John Miller. It is a part of the master's personal duty to give directions for the performance of the work he undertakes. This may be done by rules when necessary, or by the personal guidance of managers, foremen and others. "By whatsoever name such a superior employee may be called his relation to the subordinates acting under his orders is not

that of a fellow servant in respect to his performance of
the function of directing them, and the work in his
charge." Schroeder v. Railroad, 108 Mo. 322. (2) There
was evidence of the negligence charged in the petition. To
quote defendant's brief: "The charge of negligence in the
petition is that John Miller, at that place, while acting for
defendant as foreman as aforesaid, on said thirtieth day of
August, 1899, and while plaintiff was in discharge of his
duties at the base of the section of said smoke stack, which
was being elevated to its place by means of a derrick, negli-
gently and carelessly permitted and directed that a heavy
iron strap be left hanging in such a position that said strap
was liable to and did fall upon and strike plaintiff." In
Haynes v. Railroad, 54 Mo. App. 585, the court says: "The
proof of negligence need not be by direct testimony; it may
be inferred by the jury from facts and circumstances in evi-
dence."

BLAND, P. J.—The averments of the petition essen-
tial to a recovery are in substance, that plaintiff was in the
employ of the defendant corporation as an iron setter, and
was assisting in the erection of an iron smoke-stack at the
Odeon building (Masonic Temple), in the city of St. Louis,
and that one John Miller, while acting for defendant as
foreman, and while plaintiff was in the discharge of his
duties at the base of a section of said smoke-stack, which was
being elevated to its place by means of a derrick, negligently
and carelessly permitted and directed that a heavy iron strap
be left hanging at the top of said section in such a position
that said strap was liable to fall, and did fall upon and
strike plaintiff, rendering him unconscious and knocked him
from the scaffold upon which he was working to a roof about
thirty feet below, breaking his ribs, etc.

There were two answers filed. The first admitted specifically that plaintiff was an employee of defendant. The second one specifically denied that plaintiff was in the employ of defendant, and denied all other allegations of the petition.

The trial resulted in a verdict and judgment for plaintiff for $1,000. The defendant appealed.

I.   At the close of plaintiff's case the defendant offered a demurrer to the evidence, which the court denied. No complaint is made to the giving or the refusal to give other instructions, and no exceptions were saved to the admission or rejection of testimony. The sole contention of appellant is that there was not sufficient evidence to warrant the submission of the cause to the jury. In this state of the record we are bound to assume that plaintiff's evidence is true, and laying aside the controverting evidence of defendant, give to that of plaintiff, every favorable inference which may be reasonably and fairly drawn from it. Cohn v. City of Kansas, 108 Mo. 387. Before the verdict of a jury can be set aside by an appellate court it should appear that there is no evidence to support it, or that it is the result of passion, prejudice, or misconduct of the jury. Mere insufficiency of the evidence in the opinion of the appellate court is not sufficient. James v. Mutual Reserve Life Ass'n, 148 Mo. l. c. 16; Holladay Klotz Land & Lumber Co. v. Tie Co., 79 Mo. App. 543; Huth v. Dohle, 76 Mo. App. 671; Tower v. Pauley, 76 Mo. App. 287.

II.   Outside of the solemn admission of the defendant, by its first answer filed in the cause, that the plaintiff was in its employ at the time he was injured, the preponderance of the evidence on this issue of fact was on the side of the plaintiff.

III.   It was admitted on the trial that defendant contracted with the owners to finish and erect all the struct-

ural iron work for the Odeon building. To overcome the force of this admission it read in evidence a contract whereby it sublet the work, it had contracted to do, to Fred Laun, who had been in its employ for 27 years. For the erection of the smoke-stack, defendant first sublet the contract to Stupp Bros. When the defendant was ready to have the smoke-stack put up, it notified Stupp Bros. to do the work. Stupp Bros. were unprepared to proceed with the work, for the reason their erection men were out of the city, and requested the defendant to do the work. Laun, by direction of defendant, called on Stupp Bros. and offered on his own behalf to erect the stack for $125. Stupp Bros. declined to accept the offer, but offered to pay $100 for its erection. Laun did not accept the offer, but reported to the defendant, who, through its secretary, telephoned Stupp Bros. that it would accept the offer of $100 and put up the stack. It appears from Laun's testimony that defendant, a year or so prior to taking the contract for the Odeon building, had been boycotted by some of the labor unions, and that on account of this trouble *he* had taken all of its contracts for outside erection work; that on this particular job defendant's paymaster paid all his men, and that his name was carried on the defendant's pay-roll the same after the making of the contract as before, and that defendant furnished all the tools and tackle for carrying on the work. Laun superintended the work when present. When, for any cause he was absent, he left instructions and directions with John Miller, one of the workmen, for superintending and carrying on the work. The witnesses speak of Miller as a straw-boss—a pusher. Miller testified in this connection as follows:

"Q. Now, then, if there was any foreman on that job, you must have been the foreman? A. Yes, sir; only I call it pusher."

"Q.  In other words you gave your instructions how to carry on the work?  A.  That's the pusher's business."  He further says:  "I couldn't say whether I was a boss or pusher; I didn't have the authority; a boss can hire and discharge men, that's all the authority I didn't have" (i. e., the authority to hire and discharge).  "I told the men what to do.  I told the men to raise this beam here and lower that beam over there.  I would say:  'Steube, you and Joe Miller go up to the fourth floor and straighten out this beam, or attach a rope to that beam.'  I gave the men instructions how to carry on the work.  During the absence of Fred Laun, which lasted sometimes for six or eight hours, I had charge to see that the work was going on."  Other workmen testified that Miller was a foreman; that he instructed the men what to do; that he gave orders, and they obeyed them; that he had charge of the work.  It was in the absence of Laun, and while plaintiff was working at a time and place under a personal order to him from Miller, that he was injured.

In Miller v. Railroad, 109 Mo. l. c. 356, the Supreme Court says, that "where the master gives to a person power to superintend, control and direct the men engaged in the performance of work, such person is, as to the men under him, a vice-principal, and it can make no difference whether he is called superintendent, conductor, boss or foreman."  This case is approvingly cited in the following cases:  Foster v. Railroad, 115 Mo. l. c. 180; Berry v. Railroad, 124 Mo. l. c. 249; and in Cord v. Eddy, 129 Mo. l. c. 516.  The same rule is announced in Libby v. Scherman, 146 Ill. 540; in Miller v. Railroad, 58 Ark. 66, and in numerous cases found in the reports of many of the states.  Whenever the negligent servant can be fairly said to take the place of the master and to represent him, he becomes the vice-principal, and the master should be held liable for his negligences.  Wood on Master

& Servant (2 Ed.), secs. 436, 438; Grattis v. Railroad Co., 153 Mo. 380; Colorado, etc., R. R. Co. v. Napton, 17 Cal. 501; Chicago, etc., R. R. Co. v. Kneisin, 152 Ills. 458; Promer v. Railroad, 90 Wis. 215; Railroad v. Spencer, 93 Tenn. 173. From the nature of the work in which the men were engaged, being ordered from place to place on the work and to do different work and from its hazardous nature, it was the duty of the master to superintend it. His obligation to superintend the work was such that he could not shift it by delegating the oversight of the workmen and the work to an employee, who in all other respects would be a fellow servant. Dutzi v. Geisel, 23 Mo. App. 676; Taylor v. Railroad, 121 Ind. 121. In every view of the situation as disclosed by the evidence, John Miller was a vice-principal and the defendant is responsible for any injury incurred through his negligence while superintending and directing the work.

IV. The plaintiff was injured while he was at work on the smoke-stack. The stack was brought to the building in sections, which were raised into positiion one on top of another by means of a derrick placed on the roof of the structure. After being placed in position they were riveted together by men working from temporary scaffolds built around the stack as its erection progressed. "The sections were about 30 feet long, made of iron, and about 3 1-2 or 4 feet in diameter; they were placed one upon the other, were hammered into place by a man standing on the scaffold with a maul, striking the ends of the two sections to make them fit over each other. Bolts were then passed through holes in the ends of the two sections, and the two sections were securely fastened by nuts screwed on the bolts. Plaintiff was injured while the third section was being placed on top of the second section. The evidence shows that, in order to raise up this third section, four iron clamps, or straps, about

twelve inches long, three or four inches wide and one-quarter to one-half inch thick, had been bolted into the top of this section. These straps or clamps were bolted together in pairs, on opposite sides of the section. Each pair of clamps had two bolts, one running through the bottom of the clamps and the end of the section and being fastened by a nut; the other bolt running through the top of the two clamps and likewise fastened by a nut; this latter bolt also running through two links of a chain run between the two sets of clamps, forming a kind of handle like the handle of a bucket. To this chain the block and tackle from the derrick were attached and an attempt was made to hoist said section and place it on the second section. After hoisting it as high as possible it was discovered that it could not be placed on top of the second section because there was not drift enough between the top of the derrick and the top of the second section; that is, that the chain and straps attached to the top of the third section would strike the derrick before the bottom of the said section had been raised high enough to place it on top of the second section. In order to remedy this, the third section was lowered to the roof of the driveway; here the chain was removed from the top of the section and ropes lashed around the middle of it—this lashing of the ropes around the middle allowing more drift—and in this way the third section was placed on top of the second section. The evidence shows that Joe Miller and Rooney took off the chain and lashed the rope around the middle of the section, under directions of John Miller. In order to take off the chain they, with their fingers, removed the nuts and two bolts connecting the top of the two sets of clamps and running through the links in the chain; this left each pair of clamps attached to the stack by one bolt running through the bottom of the clamps and the top of the said third section of the stack.

The evidence shows that Joe Miller and Rooney attempted to take the straps off by removing the nut on these bolts; that they tried one of the nuts and were unable to remove it with their fingers, and thereupon called to John Miller, who was on top of the structure, by the derrick, to send them down a wrench. They both testified that when they called for the wrench John Miller told them to go ahead and put the rope around, and Joe Miller said he told them to let the straps go, and go ahead with the work, or words to that effect. The section was raised with the straps bolted to it. Plaintiff was at other work on the building away from the stack, until this third section was swung in place on the next section below, when he was ordered by Miller to go on the scaffold around the stack and to hammer the section in place; this he proceeded to do. After hammering on the section for some time to bring it down to its proper place, he laid down on the scaffold and took a large drift pin, which he attempted to force through the holes provided in the ends of the section for the riveting bolts. While in this position one of the iron straps fell from the top of the section and struck him with such force as to knock him off the scaffold to the roof below. Plaintiff was wholly ignorant of the fact that the straps were fastened to the section while he was working under them. Miller testified that it would have been regular to have taken them off before raising the section. The accident occurred in the afternoon. It appears from the evidence that the services of a number of men at work on the stack would not be needed after this third section was placed in position. Miller was in a hurry to get it up that afternoon, in order to save the expense of having the men return to work on the following morning. This testimony does not make out a clear case of negligence. If the straps had been securely bolted onto the section, it is not

probable that the mere shaking and vibration of the section from the raising and hammering of it in position would have worked the nuts loose and let the straps fall. Miller first ordered the chain and straps to be taken off before raising the section by the rope sling. When the men called for a wrench, in his hurry to get the section up, he told them to let the straps go, and this he did without any inquiry as to the condition or safety of the nuts on the bolts, when he knew the men had tried to remove them with their fingers. Straps at the height these were and of their dimensions and weight, were dangerous to the men working under them, and it was Miller's duty to have seen to it, before undertaking to raise the section, that they were so securely fastened as to make them reasonably safe. This he neglected to do. This is some evidence of negligence; at most it leaves the question of negligence in reasonable doubt. Where this is the case, that is, where the facts or the inferences to be drawn from them leave the question of negligence in reasonable doubt, it is then a question for the jury. Eichorn v. Railroad, 130 Mo. 575; Gratiot v. Railroad, 116 Mo. 450; Dowell v. Railroad, 115 Mo. 205; Huhn v. Railroad, 92 Mo. 440; Lynch v. Railroad, 112 Mo. 420; Sandifer v. Lynn, 52 Mo. App. 553; Fusili v. Railroad, 45 Mo. App. 535; Vannatta v. Railroad, 154 Pa. St. 262; Gilson v. City of Huntington, 45 Am. St. Rep. 853; Isham v. Post, 38 Am. St. Rep. 766.

Our conclusion is that the court did not commit error by refusing the defendant's instruction in the nature of a demurrer, and we affirm the judgment. All concur.