F. W. FITZGERALD, Respondent, v. WILLIAM CARD-
WELL, Appellant.

Springfield Court of Appeals, January 1, 1921.

MASTER AND SERVANT: Taxi Driver Held to be Agent. and not Lessee. of Owner. Where the owner of a taxi paid for its unkeep, had his name on it, and paid the license, a driver whose term was indefinite and who did nothing except to buy the gasoline and drive the car and received all in excess of ten cents per mile for his compensation, was the agent, and not the lessee, of the owner, and the latter was liable for negligence of the driver, although he could go where he pleased and fix his own charges.

Appeal from the Circuit Court of Jasper County.—*Hon.*
*J. D. Perkins,* Judge.

AFFIRMED.

*Pritchett & Bates* for appellant.

(1) The burden was on the plaintiff to prove by the preponderance or greater weight of evidence, that, at the time of the accident complained of, the driver of the Buick car, Harold Sigman, was employed by the defendant, Cardwell; that he was his servant, or agent, in driving said car, and was, at said time, acting within the scope of said employment. These matters were put in issue by the defendant by his answer, a general denial. Moorsehead v. United Railways Company, 203 Mo. 121; Moorsehead v. United Railways Company, 119 Mo. App. 541; Westervelt v. St. Louis Transit Co., 222 Mo. 325; Young v. City of Kansas, 27 Mo. App. 101. The lessor is not liable for the acts of the lessee. Moorsehead v. United Railways Co., 203 Mo. 121; Moorsehead v. United Railways Co., 119 Mo. App. 541; Westervelt v. St. Louis Transit Co., 222 Mo. 325. (2) A plea of contributory negligence does not admit the allegation of the petition as to defendant's ownership or operation of the car. Reisenleiter v. United Railways Co., of St. Louis, 155 Mo. App. 89. A plea of contributory negligence interposed by a street railway company in an action for injuries to a passenger while attempting to board a car, which alleges that whatever injuries, if any, plaintiff sustained, were caused by his own negligence while attempting to board the car while in motion, merely admits that plaintiff merely attempted to board a car, which he alleges was operated by the company, but does not admit that the company owned or operated the car. Reisenleiter v. United Railways Co., of St. Louis, 155 Mo. App. 89.

*A. G. Young* for respondent.

(1) The arrangement for a division of the receipts of the business testified to by defendant and his driver

did not constitute the relation of land-lord and tenant, but that of master and servant. 26 Cyc. 970; Woodward v. Condor, 33 Mo. App. 147; Sandifer v. Lynn, 52 Mo. App. 553; Haywood v. Rogers, 73 N. C. 320, 384; Mann v. Taylor, 52 Tenn. 267; Whitney v. Clifford, 46 Wis. 138, 49 N. W. 835; Broply v. Bartlett, 108 N. Y. 632, 15 N. E. 368. (2) The fact that Sigman was driving a car with Cardwell's name on it is sufficient to raise a presumption that he was employed by Cardwell. 8 Ency. of Evidence, 497, note 28, 26 Cyc. 410; Fink v. Mo. Furnace Co., 10 Mo. App. 74; Perry v. Ford, 17 Mo. App. 220; 37 L. R. A. 44. (3) It was a question for the jury to determine whether or not the relation of master and servant existed. Sandifer v. Lyon, 52 Mo. App. 562; Fink v. Mo. Furnace Co., 10 Mo. App. 67, 74.

BRADLEY, J.—Plaintiff sued to recover damages to his truck caused by collision with a taxi owned by defendant. The cause was tried to a jury, and verdict and judgment in the sum of $300 went for plaintiff. Defendant duly filed his motion for new trial, and the same being overruled, he appealed.

Plaintiff alleges negligence on the part of the driver of the taxi and the said driver was at the time the agent of the defendant and was at the time in the discharge of his duties as such agent; but it is not necessary to set out the charges of negligence since the appeal is based solely on the relation between the defendant and the driver of the taxi. Plaintiff contends that at the time of the collision the relation of master and servant or principal and agent existed between the driver of the taxi and defendant, while defendant contends that the relation of lessor and lessee existed, and that he is in no wise responsible for the damage done to plaintiff's truck by reason of the collision. One Sigman was driving the taxi at the time of the collision. The only witnesses testifying directly as to the relation between defendant and Sigman were defendant and Sigman. The evidence shows that defendant owned and conducted a

taxi line in Webb City, and had so owned and conducted such taxi line for some time, and had his name printed on the sides of the taxi vehicles that he operated. Sigman had been driving one of defendant's automobiles for some time prior to the collision. The collision occurred on August 3, 1919, and prior to July 16, 1919, Sigman had been receiving for his services 25 per cent of the receipts of the car he drove, defendant furnished everything. In July 16, or about that time, a different arrangement was made by which defendant was to furnish the car, and all else necessary, except gasoline which Sigman was to furnish, and Sigman was to pay defendant 10 cents per mile for each mile the speedometer showed. Prior to the date of the change in the arrangements between Sigman and defendant, Sigman had driven a car that was not equipped with a speedometer. The car was kept when not in use at defendant's garage, but calls for the car Sigman drove were received at a pool hall not not at the garage.

Sigman testifying as a witness for defendant said: "I was driving a taxi on the 3rd day of August, 1919, for myself, having leased a car. The night of the collision I was driving a car that I had leased from Mr. Cardwell. I had leased this car sometime in July; just a verbal lease. I paid for the gas and he, Cardwell, paid for the oil. I was to pay him ten cents per mile and furnish the gasoline. I kept track of the number of miles traveled by means of meter. Before that, I had been driving a car on a per cent; twenty-five per cent. I allowed him ten cents per mile, and the use of the car was mine. We settled sometimes every day, and sometimes every two or three or four days. I did not get my calls at his (Cardwell's) garage, but at the Mint Pool Hall."

Defendant concerning the arrangement about the taxi testified: "I was the owner of the Buick car on the night of the collision. On the 16th day of July I gave this car to Harold Sigman under the agreement that

he was to furnish the gasoline, and pay me ten cents per mile. He got his calls from the Mint Pool Hall. After the arrangement was made, Sigman got no orders from me as to what he should, or should not do as to the handling of his car; he made his own charges, collected his own bills and paid me ten cents per mile, and that is all I had to do with the car. He paid me ten cents per mile for every mile the meter showed, whether he collected any fares or not. He paid ten cents per mile regardless of whether he takes it joy riding, or on business.''

On cross-examination defendant gave this version of the relation between him and Sigman: ''Q. The car belonged to you? A. Yes, sir. Q. You furnished the oil and the garage and kept it there at the garage? A. Yes, sir. Q. He furnished only the gasoline? A. Yes, sir. Q. And you kept up the repairs? A. Yes, sir. We based our charges on 20 cents a mile and he was to get 10 cents a mile and I was to get the other 10 cents. If you take a man out in the country twenty miles that would be $4. That is the way we base our charges; the outside of the city calls. City calls are 50 cents. Q. You divided into two parts, then, the receipts that came in? A. No; we didn't divide nothing. He gives me ten cents a mile for every mile he runs. For every mile the speedometer reads he gives me ten cents. Q. All the rest he keeps as his pay? A. Yes, sir. If he charges forty cents a mile he gets all but ten cents. Q. What on city calls? A. He has a speedometer on the front wheel and he pays me ten cents a mile for every mile it reads. Q. Had you employed him before? A. He drove the Studebaker, and there was no speedometer on it and I paid him 25 per cent and I furnished everything. Q. Do you pay all your men that way? A. I ain't got but one, and I hire him that way. Q. And it was 25 per cent of your receipts up to what? A. Up to July 16th, and then it was ten cents per mile. Q. After you got your speedometer on you was to get ten cents a mile, and he was to have all the rest? A. Yes, sir.''

Other witnesses testifying on direct examination stated that Sigman was driving the taxi for defendant; but on cross-examination they said that they in fact did not know whether Sigman was driving the taxi for Sigman or not. But eliminating the evidence in the nature of conclusions, and taking the evidence of defendant and Sigman we are of the opinion that the relation of principal and agent or of master and servant existed, and not that of lessor and lessee, or contractor and independent contractor. Sigman's term as driver of the taxi was indefinite. Defendant could have terminated his employment at once. Defendant owned the taxi, paid for its upkeep, had his name on it, paid the State and city license to operate it, and Sigman did nothing except to buy the gasoline and drive the car, and receive all in excess of ten cents per mile for his compensation.

We do not deem it necessary to enter upon a discussion of the law applicable to the facts here, but base our opinion that the relation of principal and agent existed between plaintiff and Sigman upon Sandifer v. Lynn, 52 Mo. App. 553, and the very late case by the Kansas City Court of Appeals of Vaughn v. Davis & Sons et al., 221 S. W. 782. It is pointed out in the cases cited that it is the right control and not the fact of actual interference that distinguishes between the independent contractor and an agent or servant. Both Vaughn v. Davis & Sons et al. and Sandifer v. Lynn, supra, are bottomed on facts similar to the facts of the case at bar. The question of principal and agent or master and servant was involved in both cases. A number of authorities are collected and quoted in those cases, and we make reference to them for a discussion of the law applicable here. It is well that the law is certain. It would manifestly tend to great injustice if a taxi owner could make some kind of a vague arrangement with an irresponsible driver, and escape liability thereby. The judgment should be affirmed, and it is so ordered.

*Farrington, J.,* concurs. *Sturgis, P. J.,* dissents.