SOPHRONIA H. SLAYTON *vs.* WEST END STREET RAILWAY
COMPANY.

Suffolk.    June 29, 1899. — June 30, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Street Railway — Due Care — Responsibility for Presence
of Rails in Gutter of Street — Law and Fact.*

If a woman, who has accompanied her daughter at nine o'clock in the evening to
a point in a public street where a street car can be taken, leaves the sidewalk,
intending to go to the car and see her daughter aboard, and falls over a pile of
iron rails lying in the gutter near the sidewalk, over which her daughter, who
preceded her, had passed safely, and which she herself did not see, in an action
against the street railway corporation for injuries caused by the fall, in which
the evidence as to what the conditions were as to light and darkness at the place
of the accident is conflicting, the question of her due care is rightly submitted
to the jury.

In an action against a street railway corporation for personal injuries caused by
falling over a pile of iron rails lying in the gutter near the sidewalk of a public
street, if it appears that the rails were placed there shortly before the accident
for the purpose of being put into the defendant's track, and were soon after so
disposed of, and that work was being done upon the railway, which was then
in actual operation, in taking out old rails and putting in new ones by a con-
tractor, but no evidence of any contract for the work is introduced, and the de-
fendant rests its case without putting in any evidence as to the true relation of
the contractor to itself, the question of the defendant's responsibility for the
presence of the rails in the way is properly submitted to the jury.

TORT, for personal injuries occasioned to the plaintiff by falling
over a pile of iron rails alleged to have been placed negligently
in a public street by the defendant.    Trial in the Superior Court,
before *Blodgett,* J., who allowed a bill of exceptions, in sub-
stance as follows.

On May 28, 1897, about nine o'clock in the evening, the plain-
tiff, with her daughter, left a drug store, which is situated on the
easterly side of Massachusetts Avenue in Cambridge near the
grade crossing of the Boston and Maine Railroad, and walked
southerly on the easterly sidewalk of Massachusetts Avenue for
the purpose of enabling the daughter to take an outward bound
electric car at a point near Cameron Street which intersects
Massachusetts Avenue a short distance south of the railroad
crossing.

There lay near the sidewalk, on the easterly side of the street, four iron rails each about sixty feet long, four inches wide, and nine inches deep. Two of these rails lay side by side upon the ground, the other two lay directly on top of them, and all were closely piled together, were parallel to one another, and none projected at the ends further than any other. The southerly end of the pile came within about six feet of the flagging leading across Massachusetts Avenue on the northerly side of Cameron Street. A white post of the street railway company, indicating that there was a stopping place for outward bound cars in the vicinity, was located on the sidewalk opposite the pile of rails, which lay in the gutter about a foot outside of the white post; and the plaintiff's daughter testified that she had been accustomed to take a car for Arlington at this stopping place, two or three times a week.

Northerly from the white pole and on the opposite side of Massachusetts Avenue, at a point about 220 feet distant, was an arc electric light, and in the other direction, at a point opposite the car stable of the defendant company, on the westerly side of the avenue, was another arc electric light distant about 400 feet. Upon the gates at the steam railroad crossing were four or five lighted lanterns which, when the gates were lifted, were some twenty-seven feet from the ground. The plaintiff and her daughter and two other witnesses testified that at the time she fell a lighted lantern was standing upon the southerly end of the pile of rails, but that there was no light upon the northerly end; and this evidence was not contradicted. One Clark, who was employed by H. Gore and Company, contractors for street railway work, as "a lamp and tool man," testified that he put a lighted lantern upon each end of the pile of rails about dark, and after lighting all his other lanterns, of which there were over two hundred, he went to his supper, and was at his boarding house at the time of the accident; that when he went away, which was about an hour before the accident, he left both the lanterns burning and in their proper places; that when he returned, shortly after the accident, the lantern at the northerly end was lying on the ground with its glass broken and the light extinguished, and that the other lantern on the southerly end of the pile was still burning and in its place. There was no other

evidence that there was a light at the northerly end of the rails. No evidence was offered of any contract between the defendant and H. Gore and Company. Clark testified further that the rails were brought there on May 27 about nine o'clock in the morning, by a firm of teamsters; that these rails were laid in that place by direction of the witness, and that they lay in the gutter close to the white pole; but the plaintiff's daughter testified that these rails were there two or three days before May 28, and a police officer, one of the defendant's witnesses, testified that he thought they were there a day or two before May 28. The evidence was conflicting as to what the conditions as to light and darkness were at the point where the rails were piled. The plaintiff's witnesses and one of the witnesses for the defendant testified that it was dark; and other witnesses for the defendant testified that it was light enough to observe anything lying in the street if one looked. It was in evidence that there were no trees or intervening objects to obstruct the rays of light from the two arc lights before mentioned, but a witness for the plaintiff testified that the railroad gates when lifted were in direct line between the nearest arc light and the white post.

It was in evidence and uncontradicted that work was being done upon the street railway, digging out old rails and putting in new ones, by H. Gore and Company.

The defendant admitted that the four rails thus piled, at a time subsequent to the accident, took the place in the track of the defendant corporation on Massachusetts Avenue of certain old rails which at the time of the accident formed a part of its track in that street and which were removed. It also appeared from the evidence that this putting in of new rails instead of old ones had been going on upon Massachusetts Avenue between the Arlington line and the drug store for a considerable time prior to the accident, and was afterwards continued in the direction of Boston.

As to the manner in which the accident happened the plaintiff and her daughter testified that the daughter was intending to go to Arlington upon an outward bound car; that on coming out of the drug store they saw the car approaching from Boston, and walked toward Cameron Street; that the daughter, who was somewhat in advance of her mother, passed straight over the pile of rails

from the white post and approached the car which stood with its rear platform just past Cameron Street; that the body of the car was opposite the white post; that the plaintiff left the sidewalk at the white post, intending to go to the car to see her daughter aboard; and that she did not notice the pile of rails and fell over it, receiving the injuries complained of. There was evidence from the defendant's witnesses that there was a stopping place on Massachusetts Avenue for outward bound cars northerly of the drug store, at a point nearer to it than the point of the accident; but this fact was denied by the plaintiff, some of whose witnesses testified that this more northerly stopping place was established after the accident.

At the conclusion of the evidence, the defendant requested the judge to instruct the jury as follows:

"1. Upon all the evidence in the case the plaintiff cannot recover. 2. There is no sufficient evidence to warrant a verdict that the plaintiff herself was in the exercise of due care. 3. There is no sufficient evidence in the case to warrant the jury in finding that the defendant was guilty of any negligence. 4. There is no evidence in the case that the rails belonged to the defendant, or that it left them or suffered them to remain where they were lying when the plaintiff fell. 5. There is no evidence in the case that the defendant placed the rails, or caused them to be placed, in the position where the case shows they were. 6. There is no evidence that there was negligence on the part of anybody in placing the rails where they were, or in regard to the manner in which they were laid, or in regard to the means that were taken to warn persons in the street of their being laid there. 7. Upon the evidence in the case it does not appear that the defendant owed any duty to the plaintiff so far as regards the rails in question, or violated any duty it owed her. 8. Unless the jury find that the rails in question belonged to the defendant, the plaintiff cannot recover."

But the judge refused to give the instructions asked for, and instructed the jury as follows:

"It is conceded that at the time in question the rails — and it is admitted that there were four, which were near the post — were rails which were subsequently used by the defendant corporation, and that these particular rails took the place in the track of the

defendant corporation over this highway of certain old rails which had formed part of the track and which were removed; and there is evidence tending to show that this change, putting in the new rails instead of old rails, had been going on in the immediate neighborhood for a considerable time, and was continued thereafter. . . .

" The defendant is a corporation and must act, of course, by servants and agents, and the defendant is responsible for the acts of its servants and agents; and if there was carelessness on the part of such agents in the performance of the duty intrusted to them, the defendant must respond in damages, if anybody is damaged by reason of the carelessness. So that you have this question to consider: whether this corporation had anything to do respecting these rails, or any responsibility. The burden is upon the plaintiff, upon all the evidence in the case, to satisfy you that these rails were there in that position because the persons who left them there were at the time under the control of the defendant corporation, doing the work of the defendant corporation, and for whose acts the corporation was responsible.

" Were they the property of the defendant corporation? That is a question of fact for you; and it is to be determined in view of some of the matters to which I have called your attention, mainly this: that these identical rails, it is agreed, were put into the track over which the cars of the defendant corporation ran, and took the place of old rails which were removed therefrom. It will be competent for you to find, but it is still a question of fact for you, that these rails, at the time when they were left upon the highway near the sidewalk, belonged to the defendant corporation. And in view of what was done, the use made of these rails, taken in connection with what you may find upon the evidence was being done in the immediate neighborhood in the way of putting in new rails, it will be competent for you to find, but it is still a question of fact in respect to which the burden is upon the plaintiff, that the depositing of the rails where they were left, and leaving them there during the time you find upon the evidence they were left, was by the direction or under the authority of the defendant corporation. In other words, that they were there deposited and were there suffered to remain by the servants

and agents of the defendant corporation, acting in its behalf, and for whose acts the defendant is responsible. But unless upon the evidence in the case the plaintiff has sustained the burden of proof which the law imposes upon her, to show that the responsibility for placing the rails where they were, and suffering them to remain where you may find upon the evidence they did remain, was upon the defendant, you have no occasion to go any further in the consideration of this case. . . .

" It is admitted that Massachusetts Avenue, at the time in question, was a public highway. Any unauthorized use of the public highway, which rendered it less safe and convenient than its condition was when left in the condition in which the public authorities put it, is an obstruction ; and the person who makes such unauthorized use of the highway, or otherwise so obstructs it, commits what is known in the law as a nuisance, for which, in the case I have supposed, he may be indicted and punished criminally. And in some cases he not only may be indicted and punished because of the wrong done to the public, it being what is known as a public nuisance, but he may also be responsible in damages to a person who is specially injured by reason of such obstruction, the person so injured being at the time in the exercise of due care.

" The plaintiff says that there was such an obstruction in this case as to amount to a nuisance. You must determine whether the rails as they were placed did, essentially, really interfere with the use of that highway, and the safety and convenience of the public in the use of the highway, provided it were in the condition in which the public authorities had left it. And if you say that they did obstruct the safe and convenient use of the highway, so as to amount to a nuisance, by reason of the size of the rails, or the way in which they were placed one upon the other, then you will come to the question whether the plaintiff, in the exercise of due care on her part, was thrown down and injured.

" She had the right to go from the sidewalk on to what we ordinarily designate as the carriage-way, at any place where she chose. The carriage-way and the sidewalk all together make up the highway. Assume now that she did trip, and that she was thrown down by reason of the fact that the rails were in

this position and that her feet came in contact with the rails, she must satisfy you that she was in the exercise of due care. And by saying that she must satisfy you that she was in the exercise of due care, all that is meant is that she must satisfy you that she was in the exercise of such care as persons of ordinary prudence and discretion do in fact use under similar circumstances.

" Now, there are various things to be taken into consideration, her familiarity with the street, what she knew, if anything, as to whether work was going on at that time in relaying the tracks of the railroad corporation, the time of the accident, how light or how dark was it, what would persons of ordinary prudence and discretion have seen at the time?   You may take into consideration, if you find it to be true, that the plaintiff left the sidewalk at or near a certain white post, if you find that that white post was in fact marked white for the purpose of denoting that there, or in the immediate neighborhood, was the stopping place of cars.   The plaintiff was not a passenger; she did not intend to become a passenger upon the cars of the defendant corporation.   The defendant corporation, as to her, was not required to use the extreme care it was required to use as to the daughter, as to passengers upon the cars.   But still, if as matter of common knowledge these posts designated the places at which cars ordinarily stopped, and at which people were invited to go from the sidewalk to the car, you may take that into consideration as bearing upon the question of what the plaintiff had the right to expect as to the condition of the highway immediately in front of and adjacent to the posts.

" Now, consider all the circumstances of the case, so far as they throw light upon the question of whether the plaintiff herself was in the exercise of due care.   She must prove that she was.   If she was not in the exercise of due care, and you cannot say fairly that upon all the evidence it appears that she was using due care, the care she owed to herself and to this corporation to avoid injury, you have no occasion to go further, but will return a verdict for the defendant.   On the other hand, if you find that the plaintiff was in the exercise of due care, and you find that the presence of these rails where they were and in the position in which they were, with reference to each other, cre-

ated an obstruction upon that highway and made travel unsafe and less convenient than it otherwise would have been, and that the defendant is responsible for the condition of things existing at this place, the plaintiff will be entitled to a verdict, and you will come to the question of damages."

At the conclusion of the charge, the counsel for the defendant made the following statement : " I claim that upon the evidence the white post is not set at all for a person to leave the street at that point, and that all the evidence in the case points to the contrary ; that it is simply evidence that the post indicates that the stopping place is in the vicinity at a flagging ; and that that is the proper place for a passenger to take a car, especially when there is any obstruction in the street."

The judge then said: " Very well, I will modify what I have said to conform to that. You will say, gentlemen, what the white post designates upon the evidence in the case ; and, I think, also, you will take into consideration the knowledge, which I must assume you have in common with men in general, in respect to that matter. If a white post does not designate that that is a place where persons are invited to leave the sidewalk for the purpose of boarding a car, but that it apprises them that there is a crossing near by, or some place near by, where cars are to be boarded, then it would cease to be material as bearing upon the question of whether the plaintiff was in the exercise of due care."

The jury returned a verdict for the plaintiff ; and the defendant alleged exceptions.

*M. F. Dickinson, Jr. & W. B. Farr*, for the defendant.

*J. E. Cotter*, for the plaintiff.

BARKER, J.   1. It was right to submit the question of the plaintiff's due care to the jury.  While the plaintiff admitted that she did not notice the pile of rails over which she fell, it cannot be said that that fact alone required it to be held as matter of law that she was negligent.

The presence of the rails was a temporary condition which she was not bound to anticipate. While there were many lights in the vicinity, the jury might have found that one of the two lanterns placed on the pile as a warning to travellers had been extinguished.  The plaintiff was following her daughter,

who passed straight over the pile without accident.   Whether her conduct was that of ordinarily prudent persons under like circumstances was for the jury.   The facts in the present case are not the same as in *Raymond* v. *Lowell*, 6 Cush. 524, where the obstruction was a culvert grating, and the accident happened in broad daylight.   Here the accident happened at nine o'clock in the evening, and the evidence was conflicting as to what the conditions as to light and darkness were at the point where the rails were piled.

2.   There was evidence which would justify the jury in finding that the defendant was responsible for the presence of the obstruction of the highway.   There was no dispute that the rails were placed where they were shortly before the time of the accident, for the purpose of being put into the defendant's track, and that soon after they were so disposed of.   The defendant's road had long been, and was then, in operation.   There was uncontradicted evidence that work was being done upon the railway, in taking out old rails and putting in new ones, by a firm of contractors for street railway work, one of whose workmen had placed the warning lamps on the pile of rails over which the plaintiff fell; but no evidence of any contract between that firm and the defendant was introduced, although the defendant did put in evidence in its own behalf.

The defendant's principal argument in support of its contention that the evidence was not sufficient to warrant a verdict for the plaintiff is, that as the work of substituting new for old rails was being done by a firm of contractors, the jury must find that the firm was not acting as independent contractors for whose acts the defendant was not responsible, in order to hold the latter, and that the evidence would not justify such a finding.

But it is to be noticed that the railway which was under repair was in actual use for the transportation of passengers, and it is more natural that the control of the work of repairs which would unavoidably affect the safety of operation should be retained by the defendant than committed to independent contractors whom the defendant could not control.

Moreover, whether the relation of the firm to the defendant was that of an independent contractor or that of an employee, was a matter peculiarly within the knowledge of the defend-

ant, and when the defendant rested the case without introducing evidence upon the subject, some inference might be drawn from this conduct.

The fact that the rails were used to repair the defendant's railway had some tendency to prove that they were its property and placed in the gutter for its convenience and by its servants. Even if each separate piece of the evidence was as consistent with the defendant's non-ownership and lack of control, as with its responsibility, the state of the whole evidence at the close of that part of the trial, in view of the fact that the defendant introduced no evidence as to the true relation of the contractors to itself, justified the submission of the issue to the jury.                              *Exceptions overruled.*