## ANNIE O'HARA v. LACLEDE GAS LIGHT COMPANY, Appellant.

### Division One, June 29, 1912.

1. **NEGLIGENCE: Theory at Trial: Turntable Doctrine.** Plaintiff is bound on appeal by the theory she adopted below. If by her instructions, asked and given, she interpreted her petition to be one invoking the turntable doctrine, and that petition contains allegations that appertain to that doctrine, the appellate court will adopt that interpretation, and then determine whether or not the doctrine is applicable to the case.

2. ———: ———: **Pipe in Street: Not Applicable.** The turntable doctrine is applicable to a property owner who erects upon his own premises inherently dangerous machinery or structures which are alluring and attractive to children and are left unguarded. It has no application where a gas company employed under contract a hauling company to place a large gas pipe near the curb line of a street, which declined from that line towards the center at a grade of one and a half feet to twenty, around which children were playing, and, being left unblocked, it rolled towards the center and there struck and killed plaintiff's nine-year-old son. Pipes placed in the streets are not of and within themselves so attractive and inherently dangerous to children as to authorize the application of the turntable doctrine to them.

3. ———: **Independent Contractor: Pipes in Street.** Large cast iron pipes properly unloaded upon a street are not inherently dangerous to others; and where the danger to others arises, if at all, from the manner in which the unloading is done or the condition in which they are left after being unloaded, the work may be assigned to an independent contractor, and if such independent contractor so negligently performs the task as to inflict injury upon a child who plays about them after they are unloaded, the contractor is liable, and not the principal.

4. ————: ————: ————: Anticipated. Cause. Where the pipe was placed in the street at five o'clock and remained in position until eight-thirty, and if blocked children removed the blocks and set it rolling and it rolled down the incline until it struck plaintiff's nine-year-old child, or if not blocked it was set in motion by the exertion of the children, the movement of the pipe was from a cause not to be anticipated by a defendant responsible for the manner in which the pipe was placed upon the street, and it is not liable.

Appeal from St. Louis City Circuit Court.—*Hon. J. E. Withrow,* Judge.

REVERSED.

*Seddon & Holland* for appellant.

(1) The court erred in refusing to give the peremptory instruction asked by appellant at the close of all the evidence. Ege v. Brick Co., 118 Mo. 630; Fink v. Furnace Co., 82 Mo. 276; Morgan v. Bowman, 22 Mo. 538; Crenshaw v. Ullman, 113 Mo. 633; Independence v. Slack, 134 Mo. 66; Blumb v. City, 84 Mo. 112; Dillon v. Hunt, 82 Mo. 150; Gerdes v. Christopher, 124 Mo. 347; Salmon v. Kansas City, 241 Mo. 14. (2) The court erred in giving instruction 1 at the instance of respondent. See authorities, supra.

*A. R. Taylor* for respondent.

(1) The demurrer to the evidence was untenable. The appellant in this case cannot invoke the doctrine of independent contractor. O'Hara v. Gas Co., 131 Mo. App. 447; Independence v. Slack, 134 Mo. 77; Loth v. Heater Co., 197 Mo. 355; Wiggin v. St. Louis, 135 Mo. 568. (2) There was no reversible error in instructions given or refused. O'Hara v. Gas Co., 131 Mo. App. 446. (3) The deceased boy was not a trespasser on the street but lawfully where he was when killed. Thereupon the doctrine applicable to trespassers cannot be invoked in this case.

GRAVES, P. J.—This cause reached this court upon a divided opinion of the St. Louis Court of Appeals. There are three opinions in the case, one affirming the judgment *nisi*, another concurring in such affirmance, but upon a slightly different course of reasoning, and one dissenting opinion, with the formal request for certification to this court as required by the Constitution.

The vital portions of the petition are:

"The plaintiffs, who are the father and mother of Francis Desmond O'Hara, who, at the time herein mentioned, was a minor and unmarried, state the defendants, and each of them are and at the time herein mentioned were, corporations by virtue of the law of Missouri; that on the 12th day of July, 1903. Howard street at the place herein mentioned was an open public street within the city of St. Louis; that on said day there was placed on said street, near house number 2031, by the defendant Uffman Coal & Teaming Company, for the defendant Laclede Gas Light Company, a large iron gas pipe, to be put under ground in said street, for the purpose of conveying gas; that said gas pipe was placed on said street by defendant Uffman Coal & Teaming Company under a contract of employment with defendant Laclede Gas Light Company; and defendant Abbott-Gamble Constructing Company received said iron pipe on said street so placed for the purpose of laying same in said street under the contract of employment with defendant Laclede Gas Light Company. That said iron pipe, as so placed upon said street by the defendant Uffman Coal & Teaming Company, was upon an incline and uneven surface of said street, and was in such position as to roll from the place, where so placed, and injure persons on said street, especially children, as defendants and each of them in the exercise of ordinary care would have known.

"That defendant Abbott-Gamble Construction Company received said iron pipe so placed on said street in said insecure condition; that it was the duty of the defendants and each of them to have caused said pipe so placed upon said street to be secured or propped to prevent its rolling and injuring persons on said street, especially children; yet they negligently failed to do so, and left said iron pipe upon said street in such insecure condition, without props or fastenings to prevent it from rolling; that said pipe as so placed upon said street was an attraction to children to be about same and play thereon, as defendant and each of them, in the exercise of ordinary care, would have known; yet they and each of them negligently left said pipe on said street in said insecure condition without props or fastenings to secure same. That on said day plaintiffs' said child with other children were attracted by said iron pipe to be on and about said pipe at play, and when plaintiffs' said child was on or about said pipe at play, owing to said insecure, unpropped and unfastened condition of said pipe, it rolled upon and so injured plaintiffs' child that it died from said injuries on said day. And plantiffs aver that said negligent acts of the defendants directly caused and contributed to the injury and death of their child. And plaintiffs aver that on the 17th day of September, 1903, they instituted an action in the circuit court of the city of St. Louis, having jurisdiction for the same cause of action as herein claimed.

"That said cause was removed by change of venue to the circuit court of St. Louis county, and that on the 19th day of June, 1906, in said court having jurisdiction of said cause, plaintiffs suffered a nonsuit in said cause.

"That by the death of their son as aforesaid the plaintiffs have lost his services and care, to their dam-

age in the sum of five thousand dollars, for which sum they pray judgment.''

The petition is thus fully set out because a question as to the nature of the cause of action therein stated is made in the briefs, as well as in the dissenting opinion.

Whilst originally the suit was against three defendants, yet by voluntarily dismissing as to two of them, the plaintiffs can proceed as below as against the Laclede Gaslight Company alone, and it of course is the sole appellant.

The Laclede Gaslight Company, being desirous of putting in gas mains in certain named streets in the city of St. Louis, entered into two contracts, one with the Abbott-Gamble Construction Company, which company was to put the mains into the ground, and one with the Uffman Coal & Teaming Company, which company was to haul the mains to the ground. The latter contract becomes material and reads:

''Agreement entered into this 22nd day of April, 1903, between the Uffman Coal & Teaming Company, party of the first part, and the Laclede Gas Light Company, party of the second part, both of St. Louis, Mo. Witnesseth:

''1st. The party of the first part hereby agrees to haul such quantities of cast iron from cars to streets or lots designated by the party of the second part, or from storage lots to streets, and to distribute such pipe along the streets as required by the second party.

''2nd. The quantities of pipe to be delivered under this contract shall not be less than eighty tons per day if the second party requires that amount.

''3rd. The first party to unload cars promptly and to protect the second party from all demurrage charges growing out of detention of cars in the railroad yards from any cause whatever, provided that not more than five cars are placed on track for unloading in one day.

"4th. The party of the first part to be responsible for any damage to pipe in unloading or delivering to lot or the street.

"5th. In consideration of the above the party of the second part hereby agrees to pay the party of the first part one dollar and forty-five cents ($1.45) per ton of 2000 pounds for all pipe delivered herein provided. Payments to be made on the 10th of each month for all pipe delivered the previous month.

"In witness whereof the parties hereto have subscribed their names the day and year above written."

Other facts are well stated by the St. Louis Court of Appeals, thus:

"The action is to recover damage for the death of plaintiffs' minor son, Francis Desmond O'Hara, alleged to have been caused by the negligence of defendant. Pending the suit in the circuit court, the father of the deceased, Dennis O'Hara, died and the cause was revived in the name of Annie O'Hara, his mother. The action was dismissed as to all the defendants except the Laclede Gas Light Company and was prosecuted to a final judgment against said company, from which judgment it appealed.

"The testimony shows defendant is a corporation engaged in the business of furnishing and distributing gas for illuminating and fuel purposes, in the city of St. Louis, and had a contract with a construction company to lay underground gas pipes on Howard street in said city. It appears the Gas Company undertook to deliver the pipes to be laid under the street and to that end contracted with the Uffman Coal & Teaming Company to haul the pipes from cars and deliver them to it on such streets as it should direct. Plaintiff resided with her family at No. 3201 Howard street, near a brewery stable. The house and stable are on the north side of the street where the pipes were being laid. The street is unimproved; from

the north line to its center there is a down grade of about two and one-half feet; from the center south to the south line of the street the ground is level. On July 17, 1903, the teamsters of the Uffman Coal & Teaming Company delivered three or four gas pipes on the north side of Howard street, unloading them in front and near the brewery stable. The pipes were about two feet in diameter, from twenty-four to twenty-five feet long and weighed from twenty-four to twenty-five hundred pounds. Francis Desmond O'Hara was nine years and a few months old, had attended school for two years and was a strong, healthy, intelligent boy. Plaintiffs' evidence tends to show the pipes were unloaded about 5:30 p. m., and were not blocked or otherwise secured. There were a good many children in the neighborhood who played in the street and on the sidewalk every evening. On the evening the accident happened, plaintiff sent her son to a bakery on an errand, and either on his way there or on his return, and while standing in the middle of the street, a gas pipe lying in front of the brewery stable was started rolling by some boys playing on or about it. It rolled into the middle of the street, struck the O'Hara boy, knocked him down, rolled on him and crushed his skull, causing his death. Plaintiff, Mrs. O'Hara, testified she knew the pipes were in the street and children would play about them, and that both she and her husband cautioned their son to keep away from them.

"On defendant's behalf the evidence tends to show the pipes were all blocked by the teamsters who unloaded them; that they would not remain in place unless blocked; that the deceased and other children were playing about the pipes, jumping on and running around over them, and that deceased was standing or sitting on the pipe when it started to roll and fell in front of it.

244 Mo. Sup.—26

"As a special defense, the answer pleads contributory negligence on the part of the deceased and also on the part of his parents."

Other matters in evidence and the instructions of the court may become necessary, but these had best be stated in connection with the point made. For the present this sufficiently states the cause.

I. The dissenting opinion of GOODE, J., classifies the petition in this case as one invoking the "turntable doctrine."

The petition contains language which would authorize that construction to be placed upon it. The petition says "that said pipe as so placed upon said street was an attraction to children to be about same and play thereon," and further "that on said day plaintiffs' said child with other children were attracted by said iron pipe to be on and about said pipe at play, and when plaintiffs' said child was on or about said pipe at play, owing to said insecure, unpropped, and unfastened condition of said pipe it rolled upon and so injured plaintiffs' child that it died," etc. But we need not go to the petition for a construction of it. It was so construed by the court *nisi*, and the plaintiffs in the instructions given. The plaintiffs prayed and the court gave a very lengthy instruction, containing among other things this language:

"And if the jury find from the evidence that defendant and its agents and contractors so placing said pipe upon said street knew or in the exercise of ordinary care, would have known that children would be attracted to play at and about said pipe so placed on said street, and would be liable to be injured by said pipe rolling from said place when so placed;

"And if the jury find from the evidence that defendant and its contractor so causing said pipe to be so placed upon said street and left in said inse-

cure condition, did not exercise ordinary care in doing so;

"And if the jury find from the evidence that on the 17th day of July, 1903, while said pipe was so upon said street, in said insecure condition, plaintiff's said son was on said street, attracted to be near said pipe by said pipe, and whilst so upon said street, said pipe by reason of the said insecure condition in which it was placed and left upon said street by defendant's said contractor was caused to roll upon and over plaintiffs' son and so injure him as to cause his death," etc.

From this instruction it is clear that the plaintiff has construed the petition as conveying the "turntable doctrine" of negligence. With plaintiff construing her own petition and submitting to the jury her construction of it, we need not rack our brains in finding the proper construction to be given to the petition. By the theory adopted below she is bound here. That this instruction presented the "turntable doctrine" to the jury there can be no question. Is such doctrine applicable to the facts of this case? We think not. Under the evidence the land on the north side of the street sloped to the center for a distance of about twenty feet, from which point it was level. The pipe which killed deceased had been in place from four or five o'clock in the afternoon until 8:30 at night. The evidence is in hopeless conflict as to whether or not the pipe was blocked. The fall of the land was about one and one-half feet in twenty feet. The evidence is conflicting as to whether deceased was playing around the pipe at the time it began to move down the hill, or whether he was near the center of the street and was there struck by the moving pipe. A number of children were playing around the pipe when it began to move down the decline of twenty feet. But we need not go into further detail. The "turntable doctrine" has no place in this case. Plaintiffs' instruction number one was therefore erroneous, and that theory of the peti-

tion likewise erroneous. For these things the case must at least be reversed and remanded.

The "turntable doctrine" of negligence had its birth in a property owner erecting upon his own premises inherently dangerous machinery or structures, which were alluring and attractive to children, and leaving such unguarded. The doctrine has been combated by many courts, but with more or less limitations has been finally received by a majority of the State courts.

The recent case of Brown v. Salt Lake City, 33 Utah l. c. 236, 14 Am. & Eng. Ann. Cas. l. c. 1007, thus states the position of the courts upon the rule:

"The third ground upon which the city based its request for a directed verdict in its favor is one that is not entirely free from difficulty with respect to the law, nor is it free from doubt with regard to the sufficiency of the facts to sustain the verdict. The trial court submitted the case to the jury upon the doctrine announced in what are termed the "turntable" cases. Sioux City, etc. R. Co. v. Stout, 17 Wall. 657, 21 U. S. (L. Ed.) 745; Keffe v. Milwaukee, etc. R. Co., 21 Minn. 207, 18 Am. Rep. 393; and Barrett v. Southern Pac. R. Co., 91 Cal. 296, 25 Am. St. Rep. 186, may be classed as some of the leading cases upon that subject, and as presenting a fair illustration of the principles upon which the doctrine of the turntable cases rests. Since the first of the foregoing cases was decided a large number of States have followed the doctrine therein announced, and it has become so generally known and recognized by both bench and bar that it is not deemed necessary to cite or refer to the numerous cases wherein the doctrine is illustrated and discussed. In some States, however, namely Massachusetts, New Hampshire, New York, and perhaps a few others, the doctrine has not been adopted by the courts. In some States where the doctrine prevails the courts have sought to limit its application to open and

dangerous machinery and appliances. Of this class Sullivan v. Huidekoper, 27 App. Cas. (D. C.) 154, 5 L. R. A. (N. S.) 263; Overholt v. Veiths, 93 Mo. 422; Richards v. Connell, 45 Neb. 467, and Stendal v. Boyd, 73 Minn. 53, are fair examples. The more recent adjudications, however, seem to apply the doctrine of the turntable cases to artificial structures and things other than machinery, when such structures and things are in themselves dangerous and are alluring or attractive to children of immature judgment and discretion. This class is well illustrated by the following, among other cases: Pekin v. MacMohan, 154 Ill. 141; Brinkley Car Co. v. Cooper, 60 Ark. 545. A large number of cases of each class might be cited in which the various grounds upon which the courts rest their decisions are stated, but the foregoing cases are deemed sufficient as illustrative of each class."

As above indicated our court has followed the middle ground, and has been exceedingly slow to enlarge the field of the "turntable doctrine." For a full review of all our cases beginning with the Overholt-Vieths case, cited supra, see the recent case of Kelley v. Benas, 217 Mo. 1. In that case the defendant had negligently piled up lumber in his lumber yard so as to make it dangerous for children playing therein. Children were in the habit of playing in and about the lumber yard as shown by the proof. LAMM, J., concludes his review of the case law of this State and elsewhere thus:

"If the old channel of the law is to be quite changed by the application of the new doctrine automatically and without discrimination, if sentimental considerations (however elevated and tender) are to usurp the place of cold and calm reason as to the foundation for rules of law, then the floodgate now damming back liability will be raised, letting in strange and deep waters for the landowner to struggle with. Not only will he be liable for boys drowned while swimming in

his stock pond (the idea of swimming being alluring to a boy), for those who fall into uncovered wells, cisterns and cellars (the notion of playing on the brink of such being a boyish one), for children who are suffocated while playing in piles of sand accumulated for building purposes or in sliding down stacks of straw unscientifically piled and exposed, but he may be mulcted in damages for injuries to his neighbors' children, who, romping by his hay mow, without his invitation, break their bones by sliding down his hay chute, or those who, playing in his rock quarry, are hurt. Shall he fence against adventurous, trespassing boys? Almost as well suggest 'that he build a wall against birds.' If he is held to liability for injury to the children of Jones because of the way he piles his lumber, by the same token, as to Brown, liability would be fastened on him for the way he piles his stones, his brick, his corn in pens, his hay ricks and his cord wood on his private grounds—in fact, as has been pointedly said, every landowner will be liable for injuries to his neighbors' children under the new doctrine except the neighbor himself. We cannot well write the law that way.''

In the case at bar even if it can be said that the defendant had such possession of the street as would make the application of the "turntable doctrine" proper, yet the mere placing of a large gas or water pipe in the street, so possessed, does not call for the application of the rule.

We think GOODE, J., was right when he said in the Court of Appeals: "The facts are the pipe was laid in the street at about five o'clock in the afternoon and remained securely there until about eight-thirty, when it started to roll and caught the deceased. The length of time the pipe remained in position demonstrated it was securely laid, and no carelessness can be predicated in regard to the manner in which it was laid unless the defendant was bound to anticipate children

would play about it and guard against an injury to them. In my opinion this is invoking the doctrine of the turntable cases and applying it to an instance to which it had no application. There was nothing about these pipes in the street so attractive to children or so dangerous to them if attracted, as to impose on defendant the duty of taking precautions with especial reference to accidents to children. Children will romp occasionally about any appliance, tool or device they have access to; but only those which are apt to entice them into danger impose on the owner the duty of guarding against their intrusion. In fact the turntable cases are anomalous and it is the practice of the courts to carry their doctrine no further than the previous decisions compel. This matter was considered in Witte v. Stifel, 126 Mo. 295, and Barney v. Railroad, 126 Mo. 372. The present case is not a case for the application of that rule, and the duty of defendant extended only to laying the pipes in such a manner as not to unnecessarily impede travel or endanger persons using the street for ordinary purposes. They are not bound to take measures to make the pipes so secure that boys could not start them in motion by getting on them. In the instructions for plaintiff the court made this an element of liability and in so doing erred, in my judgment."

So we say that the mere laying of the pipe on the slight incline proven in the case does not create a condition of things to invoke the "turntable doctrine." Pipes placed in the streets are not of and within themselves either so attractive to children and so eminently dangerous to children as to authorize the application of the rule applied to turntables and cases involving other inherently dangerous and inherently attractive objects. The application of the rule imposed the duty upon defendant to use special care as to children. This was a burden not imposed by the law under the facts of the case.

So we conclude that this theory of the case should not be invoked either by pleading or proof, and as such was one of the theories below, the cause must at least be reversed and remanded.

II. But the cause proceeded in the lower court upon the idea that the petition was broad enough to submit the case upon negligence other than the negligence embraced in the doctrine above discussed. Instructions were given along other lines. It may be that we could strike from the petition those portions relating to "turn-table" negligence, and yet have a paper case. At any rate as the case must at least be reversed and remanded, the petition could be amended, and we had as well now dispose of another theory of the case presented by the defendant. Defendant says that there is no liability as to it, because the work was being done by an independent contractor, and the negligence if any was the negligence of such contractor. One of the opinions from the Court of Appeals lays special stress upon the word "required" used in the contract between defendant and the Uffman Coal & Teaming Company. That contract among other things says: "The party of the first part hereby agrees to haul such quantities of cast iron gas pipe from cars to streets or lots designated by the party of the second part or from storage lots to streets, and to distribute such pipe along the streets as required by the second party."

This language must be construed in the light of the facts. Defendant was laying mains in certain streets of the city. The actual work of digging the trenches and putting in the pipe on the grounds was let to another contractor. The work of putting the pipe on the ground for use in laying the mains was let to the Uffman Company under the contract. To our mind the word "required" as therein used simply means that the pipe should be placed on the ground as

defendant needed it for the work being done by the other company. In other words, that the word "required" has reference to the needs and demands of the company laying the pipes in the ground. It therefore has no special significance which would thwart the doctrine of independent contractor, if such doctrine is otherwise in the case.

We can see no reason why the doctrine of independent contractor should not apply to this case. The defendant had to designate the streets upon which pipes were "required" by the contract. Whether such pipes were to be placed on the north side of the street or the south side of the particular street the contract is silent. That was a matter left solely to the Uffman Company. Whether they should be blocked to prevent them from rolling, was a matter relating to the unloading of the pipes in the street and was under the control of the Uffman Company. The placing of pipes in streets is not of itself hazardous, or one threatening injury to others. This was the task assigned to the Uffman Company. As said by Goode, J., the danger arose from the manner of performing the task and was not a danger inherent in the task itself. Work of that character can be assigned to an independent contractor, and if such independent contractor so negligently perform the task as to inflict injury upon another, the contractor is liable, and not the principal.

The rule announced by 2 Thompson on Negligence page 899, and approved by this court in Loth v. Columbia Theatre Co., 197 Mo. l. c. 354, is: "The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such con-

tractor, his subcontractors, or his servants, committed in the prosecution of such work.''

This same rule was approved by this court in Independence v. Slack, 134 Mo. l. c. 75. Pipes properly unloaded upon a street are not inherently dangerous to others. They could be located so as to make them dangerous, but this arises from the manner of performing the task and not from the task itself. We are of opinion that the dissenting opinion of GOODE, J., in this case properly declares the law, and that on the theory of an independent contractor the defendant is not liable.

III. There is, however, another view to be taken of this case. Grant it that the defendant is responsible for the manner in which this pipe was placed in the street, is it liable under the evidence adduced? Under the evidence this pipe was placed there at five o'clock in the afternoon and did not move from its place until eight-thirty in the evening. So that whether blocked or unblocked it remained in position for three and one-half hours, and did not then move until boys began to play over it. If, as we have held in paragraph one, the "turntable" doctrine of negligence has no place in this case, then is the defendant liable for the movement of this pipe occasioned as it clearly was under the evidence, by children playing thereon? We think not. If the pipe was blocked as defendant's evidence tends to show, the blocks were evidently removed by the children, and in such case there could be no liability upon the defendant. And if on the other hand it was unblocked, as plaintiff's evidence tends to show, and it required the exertion of these children to remove it from its moorings, as it evidently did, under the facts, there should be no liability, because the movement of the pipe would be from a cause not to be anticipated by defendant, under the governing laws of the case. We

conclude that the evidence does not disclose liability and the judgment *nisi* should be reversed. All concur except, *Valliant, J.*, absent; *Woodson, J.*, in separate opinion.

## CONCURRING OPINION.

WOODSON, J.—I fully concur in all that is said in the opinion in this case, and wish to add that, to my mind, it is perfectly clear that it was neither the negligence of the appellant nor of the independent contractor that caused the injury complained of, but it was the result of an entirely independent cause, namely, the action of the boys in starting the pipe to rolling.

The principle underlying the "squib case" is inapplicable here. So if anyone is liable in this case it is those who were responsible for the independent cause that started the pipe to roll.