## AUGUST F. SEMPER, Respondent, v. THE AMERICAN PRESS, Appellant.*

St. Louis Court of Appeals. Opinion filed June 2, 1925.

1. **MASTER AND SERVANT**: Independent Contractor: Person Delivering Newspapers to Dealers: Evidence: Whether Independent Contractor or Servant of Publisher: Jury Question. In an action for damages for personal injuries alleged to have been inflicted by the defendant through its servants and agents, whether one employed by defendant, a publisher of newspapers to deliver bundles of newspapers to dealers along a certain route, was an independent contractor or a mere servant as regards defendant's liability to a third party injured by employee's assistant who threw a bundle of newspapers from an automobile in which deliveries were being made, and struck the plaintiff, *held*, under the evidence, a question for the jury.

2. **NEGLIGENCE**: Throwing Bundle of Newspapers from Automobile to Sidewalk: Pedestrian Struck and Injured: Evidence: Sufficiency. Proof that a bundle of newspapers was thrown from an automobile to the sidewalk where plaintiff was standing while the automobile was in motion, and that the bundle struck the plaintiff in the face with great force, is sufficient proof that the bundle was thrown in the direction of plaintiff's face and struck him with great force as alleged.

3. ———: ———: ———: Grossly Negligent Act. The throwing of a bundle of newspapers from a moving automobile with great force in the direction of a person's face, while he was standing on the

sidewalk of a public street, without more, is a grossly negligent act, regardless of whether the person throwing was looking in the direction in which he was about to throw the same.

4. ———: Petition: Specific Acts of Negligence: Evidence: All Specification of Negligence Need Not Be Proven. It is not essential that plaintiff prove all the specifications of negligence contained in his petition; it is only essential that he prove sufficient of them to make out a case against the defendant.

5. ———: Pedestrian Struck and Injured by Bundle of Newspapers Thrown to Sidewalk: Evidence: Discrepancy as to Time: Not Ground for Sustaining Demurrer to Evidence. In view of other facts and circumstances in evidence tending strongly to show that the bundle of newspapers which struck plaintiff was thrown from B's automobile, *held* that discrepancy between the testimony of plaintiff that the accident happened at 4:53 p. m., and that of B, plaintiff's witness, that he did not leave the newsper office until 5:11 p. m., was not sufficient ground to authorize the sustaining of a demurrer to the evidence.

6. MASTER AND SERVANT: Acts of Servant and Another: Acting in Concert: Servant's Acts: Master Liable. Where defendant's servant, in delivering bundles of newspapers along a certain route to dealers, took another along to throw out the bundles, and the other threw a bundle, striking plaintiff, in the immediate presence of the servant, under his immediate supervision, with his assent, and in accordance with his wish and desire, the act of the other was the act of the servant, for which defendant was liable.

7. INSTRUCTIONS: Master and Servant: Alleged Negligent Act by Servants: Instruction not broader than Petition. An instruction requiring the jury to find that B. was the servant of defendant and that the bundle of newspapers which struck plaintiff was thrown by S. under circumstances whereby his negligent act became the act of B, was not broader than the petition, as the allegation of the petition that the servants of defendant committed the tortious act, was broad enough to cover the act of S, for the act of S, was the act of the servant, B.

8. ———: ———: ———: Instruction Submitting Negligence in Permitting Automobile to Be in Motion When Bundle Was Thrown Therefrom: Not Broader Than Petition. An instruction submitting the question of negligence in permitting an automobile to be in motion at the time a bundle of newspapers was thrown therefrom is covered by the allegation of the petition that the bundle was negligently thrown while the automobile was in motion, and does

Semper v. The American Press.

not predicate liability upon the negligent driving of the automobile, *held* not broader than the pleadings and the proof.

9. ———: ———: ———: **Independent Contractor: Instruction Not Erroneous As Not Excluding Liability if Employment was That of Independent Contractor.** An instruction requiring the jury to find that B, was subject to the control and orders of defendant with reference to the means and manner of doing his work, before they can find for plaintiff, does not permit the jury to find for plaintiff if B, in performing his work, was acting within the scope of his employment for defendant, though the jury may have found that the employment of B, was that of an independent contractor.

10. ———: **Damages: Instruction Failing to Limit Damages: Harmless in View of Amount Awarded.** The failure of an instruction to limit the amount of damages recoverable to the amount prayed for in the petition was harmless where the amount of damages awarded by the jury was very much less than the amount prayed for.

11. **WITNESSES: Cross-Examination of Hostile Witness: Discretion: Not Abused.** Plaintiff's Witness being an employee of defendant, and exhibiting considerable hostility to plaintiff in giving his testimony, the trial court did not abuse its discretion in permitting him to be cross-examined.

12. **DAMAGES: Excessive Damages: Eye Injured: $1500 Not Excessive.** A verdict and judgment for $1500 damages for injuries to a railway mail clerk caused from a bundle of newspapers being thrown in his face, injuring the eye and weakening the eye-sight, requiring the use of glasses, *held* not such that the appellate court ought to interfere with the award for excessiveness.

---

*Headnotes 1. Independent, 31 C. J., p. 474; Master and Servant, 26 Cyc., p. 1576; 2. Motor Vehicles, 28 Cyc., p. 47; 3. Motor Vehicles, 28 Cyc., p. 37; 4. Negligence, 29 Cyc., p. 587; 5. Motor Vehicles, 28 Cyc., p. 48; 6. Master and Servant, 26 Cyc., p. 1521; 7. Master and Servant, 26 Cyc., p. 1579; 8. Motor Vehicles, 28 Cyc., p. 49; 9. Master and Servant, 26 Cyc., p. 1579; Motor Vehicles, 28 Cyc., p. 49; 10. Appeal and Error, 4 C. J., Section 3027; 11. Witnesses, 40 Cyc., p. 2476; 12. Damages, 17 C. J., Section 454.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Franklin Miller,* Judge.

AFFIRMED.

*Buder & Buder* for appellant.

(1)   One who has contracted with a competent and fit person, exercising an independent employment, to perform certain work for him, not in itself unlawful or attended with danger to others, according to the contractor's own methods and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractor or his servants, committed in the prosecution of such work.   McGrath v. St. Louis, 215 Mo. 191; Crenshaw v. Ullman, 113 Mo. 633; Fink v. The Missouri Furnace Co., 82 Mo. 276; Mound City Paint and Color Co. v. Conlon, 92 Mo. 221; O'Hara v. Laclede Gas Light Co., 244 Mo. 395; Thomassen v. West St. Louis Water & Light Co., 251 S. W. 450; Kipp v. Oyster, 133 Mo. App. 711; Gall v. Detroit Journal Co., 191 Mich. 405; Morgan v. Smith, 159 Mass. 570; Corbin v. The American Mills, 27 Conn. 274; Wood v. Cobb et al., 13 Allen 58; Casement v. Brown, 148 U. S. 615.   (2)   One who voluntarily assists a servant at the latter's request does not, as a general rule, become a servant of the master so as to impose upon the latter the duties and liabilities of a master towards such volunteer, or so as to render the master liable to third persons injured by such volunteer's acts or negligence while rendering such assistance.   Moll on Independent Contractors, page 12, sec. 9; 26 Cyc. 1085, Master & Servant; Chaney v. L. & M. R. Ry. Co., 176 Mo. 598; Mangan v. Foley, 33 Mo. App. 250; Thyssen v. Davenport Ice etc., Co., 134 Iowa, 749; White v. J. E. Levi & Co., 137 Ga. 269.   (3)   An instruction submitting a cause to the jury must not be broader than the proof and the pleadings, and must be within both.   An instruction which submits an issue to the jury, which issue is pleaded though not proven, is erroneous.   Ostopshook v. Cohen-Schwartz Rail & Steel Co., 227 S. W. 642; Riley v. Independence, 258 Mo. 671; Sparkman v. Wabash Railroad, 191 Mo. App. 463; McDonald v. Railroad,

165 Mo. App. 75; McElvain v. Dorroh, 204 S. W. 824; State ex rel. v. Ellison, 270 Mo. 645; Lorton v. Trail, 216 S. W. 54. (4) An instruction which fails to limit the damages recoverable to the amount sued for in the petition is erroneous. Spohn v. Mo. Pacific Ry. Co., 116 Mo. 617; Smoot v. Kansas City, 194 Mo. 513; Fink v. United Railways, 219 S. W. 679; Finley v. United Railways, 238 Mo. 6; Tyon v. Wabash Ry. Co., 207 Mo. App. 322; Walters v. United Railways, 165 Mo. App. 628; Haake v. Milling Co., 168 Mo. App. 177; Radtke v. Basket & Box Co., 229 Mo. 1, 18, 19, 20; Tinkle v. Railroad, 212 Mo. 445. (5) The verdict and judgment are excessive. Mitchell v. United Railways Co., 125 Mo. App. 1; Goetz v. Ambs, 22 Mo. 170; Dixon v. Scott, 74 Ill. App. 277; Central Texas & N. W. Ry. Co. v. Gibson, 35 Tex. Civ. App. 66; Hoxsey v. St. Louis & S. R. Co., 184 Ill. App. 410; Young v. Bacon, 183 S. W. 1079. (6) An instruction which submits a hypothesis not supported by the evidence as a predicate of liability is erroneous. McDonald v. Railroad, 165 Mo. App. 75. (7) Where plaintiff alleges the specific acts of negligence causing the injury he is required to prove those specific acts and cannot rely on the doctrine of *res ipsa loquitur*. This is a rule of long standing in this State. Reid v. Schaff, 210 S. W. 85; Hennekes v. Beetz, 203 Mo. App. 63; Byers v. Essex Inv. Co., 281 Mo. 375; Motsch v. Standard Oil Company of Indiana, 223 S. W. 677; Boeckmann v. Valier & Spies Milling Co., 199 S. W. 457; West v. Holladay, 196 S. W. 403; Roscoe v. Met. Street Ry. Co., 202 Mo. 576; Riley v. Independence, 258 Mo. 671.

*Harry F. Russell* and *Marsalek & Stahlhuth* for respondent.

(1) In passing upon the demurrer to the evidence it is the duty of the court to accept as true all evidence in favor of plaintiff and all inferences in plaintiff's favor which may, with any degree of propriety, be drawn there-

from, and the court cannot draw inferences in favor of defendant to counterbalance or overthrow inference in plaintiff's favor. Knapp v. Hanley, 108 Mo. App. 360; Troll v. Drayage Co., 254 Mo. 332; Buesching v. Gas Light Co., 73 Mo. 219. The court can sustain a demurrer only when the evidence and the inferences to be drawn therefrom, considered in the light of the foregoing rule, show conclusively that plaintiff has no case. Scherer v. Bryant, 273 Mo. 602; Gratiot v. R. R., 116 Mo. 466; Steffens v. Fisher, 161 Mo. App. 386. (2) Under the circumstances shown by this record plaintiff is not bound by all the statements of the witness Bresler, even though he was called by plaintiff. Black v. Epstein, 221 Mo. 304; McLean v. Clark, 31 Fed. 501. (3) The court could not properly take the case from the jury on the theory that Bresler was an independent contractor. Under the evidence and the reasonable inferences in plaintiff's favor therefrom, there was ample opportunity for reasonable minds to differ on the question. The proposition was properly submitted to the jury. Tomlinson v. Marshall, 208 Mo. App. 381; Gayle v. Mo. C. & F. Co., 177 Mo. 427; Fitzgerald v. Cardwell, 226 S. W. 971; O'Hara v. Gas Co., 244 Mo. 409; Mullich v. Brocker, 119 Mo. App. 332; Borah v. Motor Co., 257 S. W. 145; O'Neill v. Blase, 94 Mo. App. 648; Porter v. Withers' Estate, 201 Mo. App. 27; Alexander v. Pub. Co., 197 Mo. App. 601; Scherer v. Bryant, 273 Mo. 596; Sandifer v. Lynn, 52 Mo. App. 553. (4) Where for any reason the evidence to prove a fact is chiefly if not entirely within the control of an adverse party the burden of proof, meaning the burden of evidence, is on the party who knows or has special opportunity for knowing the fact. Schneider v. Maney, 242 Mo. 43. "Slight circumstances are sufficient to establish a fact where the defendant is peculiarly possessed with power to disprove it and fails to adduce such evidence." Davenport v. Elec. Co., 242 Mo. 122. The burden of proving that Bresler was an independent contractor is upon the defendant. Knoche v. Pratt, 194 Mo.

App. 304, 5.   (5)   The master is not absolved from lia-
bility because the negligence of a third party concurs
with the negligence of a servant in producing an injury.
Harrison v. Elec. Co., 195 Mo. 623.   Where a servant
permits a volunteer to perform a simple manual act of
the employment, in the presence and with the assent of
the servant, the act of the volunteer is regarded as the
servant's act, and the master may be held liable there-
for.   James v. Muehlbach, 34 Mo. App. 512; Blumenfeld
v. Grocer Co., 206 Mo. App. 509.   (6)   Plaintiff's in-
struction No. 1 was not improper because it failed to have
the jury find that both Bresler and Schrell were defend-
ant's servants.   It was not requisite that plaintiff have
the jury find all the allegations of the petition, but only
sufficient to make a case.   State ex rel. v. Ellison, 223
S. W. 671; Foster v. Railroad, 115 Mo. 165, 181; Corby
v. Tel. Co., 231 Mo. 428.   (7)   The damages awarded
were not excessive.   Steigleder v. Lonsdale, 253 S. W.
487; Lattimore v. E. L. & P. Co., 128 Mo. App. 37;
Frazier v. Smelting Co., 150 Mo. App. 419; Quinley v.
Traction Co., 180 Mo. App. 287.   (8)   It was within the
court's discretion to permit plaintiff to cross-examine the
witness Bresler, and there was no showing that this dis-
cretion was abused.   Dauber v. Josephson, 237 S. W. 153.

SUTTON, C.—This is a personal injury case.   Plain-
tiff sues to recover damages for injuries to his left eye
alleged to have been inflicted by the defendant through
its servants and agents.   The cause was tried to a jury,
there was a verdict and judgment in favor of plaintiff
for $1500, and the defendant appeals.

The accident in which plaintiff received the injuries
for which he sues occurred at the northwest corner of
Fifteenth and Market streets, in the city of St. Louis,
late in the afternoon, on September 15, 1921.   The de-
fendant, a Missouri corporation, was engaged in the
business of publishing and distributing a newspaper
known as the St. Louis Times.   Its plant was located at

Broadway and Chestnut street in said city. One George D. Bresler delivered the base-ball edition of the Times to dealers for defendant on what was known as the Manchester run. Bresler used a Ford touring car in making these deliveries. The papers were wrapped in bundles at defendant's plant and labels were placed on the bundles showing where and to whom the bundles were to be delivered. Bresler sometimes permitted a boy by the name of Schrell to assist him in delivering the papers. Schrell was assisting in the deliveries at the time of the accident. Bresler drove the automobile, and Schrell rode in the back seat and threw the bundles from the automobile at the places of delivery. The northwest corner of Fifteenth and Market was on the Manchester run, and Bresler was required to deliver a bundle of papers at that place for a dealer by the name of Samuels. At the time of his injury the plaintiff was standing on the sidewalk at the northwest corner of Fifteenth and Market. Bresler in making his deliveries drove westward on Market street, and as he passed the northwest corner of Fifteenth and Market Schrell threw a bundle of papers from the automobile and struck the plaintiff with it in the left eye, inflicting the injuries for which he sues.

Plaintiff testified: "I was walking west along Market street and stopped for a moment to wipe my forehead, and the next thing I thought lightning struck me. I didn't know what happened. I felt like all the light had gone out of me. It was a sudden shock. I didn't know what in the world was going on. I was hit by something. Immediately after the bundle struck me I didn't see anything. When I sufficiently recovered my composure, I saw that bundle of papers lying at my feet, and I saw an automobile about a block away, going west. I saw two persons in the automobile; they were looking backwards. They were not near enough for me to identify them. The bundle you now show me is the bundle I found lying at my feet. It contains copies of the St. Louis Times. That is the bundle that hit me. The spot on the bundle

is blood. I was bleeding so profusely that the blood was just all over the sidewalk and some of it got on the bundle. After the accident I went to the City Dispensary and the surgeon in charge laid me out on a slab there and made two or three stitches in the wound, which was a cut over the lower lid in the inner corner of the left eye. There is a mark there yet. It cut through the lower lid. I am fifty-three years old and reside at Chicago. At the time of my injury, I was employed as a railway mail clerk, distributing mail en route between Chicago and St. Louis, and received a salary of $2,300 per year. After they finished with me at the City Dispensary I went to where I generally stopped, where I sleep here, and when I got there the man in charge of the building told me somebody had been there from the Times to see me. I then went home to Chicago. I did not work back; the run went by default; I was unable to make the run. In Chicago I obtained medical treatment for my eye. I was under treatment of a physician there from September 15th to October 7th. My face was bandaged and I had to have the doctor examine the eye and dress the wound. My bill for treatment was twenty-nine dollars. On the latter date I returned to my work. On going back to work I discovered my eyesight was very much weakened, so much so in fact I had to use a magnifying glass to decipher addresses that were poorly written. I never had to do this before I was injured. My eye has continued in the condition I have just described I might say practically to this day. It has gained in strength, that is, I do not have to use a magnifying glass, but I am never able to do anything without glasses at all. I have never since the accident been able to read without glasses. Prior to my injury I never had to use glasses except to work at night. Now I cannot work at any time without glasses. I found that bundle of papers at my feet and from that I make the deduction that it was what hit me.''

The bundle identified by the plaintiff was introduced in evidence. It contained ten copies of the base-

ball edition of the St. Louis Times, and was labeled thus: "Manchester run. Samuels Sat 5 D 10 15th and Market." It was wrapped in cylindrical form, was about eighteen inches in length, three or four inches in diameter, and weighed about three pounds. It has been brought here with the record for the inspection of the court by the consent of the parties.

Dr. John Ryburn of the St. Louis City Dispensary, produced on behalf of plaintiff, testified that he treated plaintiff on September 15, 1921, for a laceration of the lower lid of the left eye, about one-half inch in length; that he treated the wound and took one stitch in same; and that on his examination he did not detect any injury at that time to the eye.

George D. Bresler, produced on behalf of plaintiff, testified: "During the base-ball season I had a contract with defendant to deliver papers for it in the late afternoon with my own machine, at five dollars per run, amounting to thirty-five dollars per week. I only delivered papers for defendant during the base-ball season. During the rest of the year I sold papers at corner boxes. I made arrangements to deliver papers for defendant, with Mr. Pollard, defendant's circulation manager, about four years prior to 1921. I was hired by Mr. Pollard. After I made that arrangement with Mr. Pollard, I came down every season and went back to work. I would come down and find out if I would get my job back. I got my job back in 1921 when the base-ball season started. Mr. Pollard was not there then. Mr. Bangor was the one who told me to come back. I just came to him and said, 'Bill, am I going back this year?' and he said, 'certainly.' He said, 'You go back on your job.' After that I came there every evening and delivered this run. Bangor had charge of the papers when they left the press room to be put on the machines to be sent out to the different stations. On the day that the plaintiff was hurt I left the corner of the Times Building on my regular run. I went out Chestnut to Fourteenth, south to Market,

then west, until I got to the city limits. I had a bundle to deliver at Fifteenth and Market. The boy, Schrell, who was with me that day, threw the bundle off. I let him go with me every day. If he would be there going out I would take him. He went with me two or three times a week, throwing off bundles. On the various occasions when he rode with me, he sat in the back of the car and dropped the bundles off for me until we got to Eighteenth street. As I passed the corner of Fifteenth and Market on the day the accident happened, the bundle was thrown off. I slowed down for the bundle to be thrown off. Schrell was employed in the post office department and weighed mail at the Times office. Every time I would see him he would say, 'Are you going west,' and I would say, 'sure.' I would give him a lift and he would throw these bundles off to help me out. I did not pay him anything to do that.''

Defendant offered no evidence. Schrell, Pollard, and Bangor were not produced as witnesses, nor were they accounted for.

The defendant assigns reversible error upon the refusal of its demurrer to the evidence. The chief ground urged in support of this assignment is that the evidence conclusively shows that Bresler was an independent contractor and not a mere servant of defendant. It is argued that the undisputed evidence shows that Bresler was under contract with defendant to deliver its papers during the base-ball season, for a round sum, employing his own means and methods, without being subject to the control of defendant except as to the results of his work, and that therefore he should be adjudged an independent contractor as a matter of law.

''The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his

217 M. A.—5.

work, will not be answerable for the wrongs of such contractor, his sub-contractor, or his servants, committed in the prosecution of such work. An independent contractor is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.'' [Gayle v. Missouri Car & Foundry Co., 177 Mo. 427, l. c. 446, 76 S. W. 987; Crenshaw v. Ullman, 113 Mo. 633, l. c. 639, 20 S. W. 1077; McGrath v. St. Louis, 215 Mo. 191, l. c. 210, 114 S. W. 611; Fink v. Missouri Furnace Co., 82 Mo. 276, l. c. 283.]

''The general rule is that one employing a competent person, exercising an independent occupation, to do a work for him which is not unlawful in itself or dangerous to others, and retaining no control of the methods such person may adopt or power to direct or control him in the work except as to the results, will not be answerable for the wrongful or negligent acts of such contractor or his servants committed in the prosecution of the work.'' [Loth v. Columbia Theatre Co., 197 Mo. 328, l. c. 354, 94 S. W. 847; O'Hara v. Laclede Gas Light Co., 244 Mo. 395, l. c. 409, 148 S. W. 884; Sandifer v. Lynn, 52 Mo. App. 553, l. c. 562.]

''Although, in a general sense, every person who enters into a contract may be called a 'contractor,' yet that word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do a certain piece of work for other persons, using his own means and methods, without submitting himself to their control in respect of all its details. The true test of a 'contractor' would seem to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the *result* of his work, and not as to the means by which it is accomplished.'' [Mullich v. Brocker, 119 Mo. App. 332, l. c. 337, 97 S. W. 549; O'Neill v. Blase, 94 Mo. App. 648, 68 S. W. 764.]

"The term contractor is applicable to all persons following a regular, independent employment, in the course of which they offer their services to the public to accept orders and execute commissions for all who may employ them in a certain line of duty, using their own means for the purpose and being accountable only for final performance." [Cooley on Torts (2 Ed.), p. 647.; Mullich v. Brocker, 119 Mo. App. 332, l. c. 338, 97 S. W. 549; Sandifer v. Lynn, 52 Mo. App. 553, l. c. 563.]

"The relation of master and servant only exists where the person sought to be charged as master either employed or controlled the servant, or had the right of control over him at the time when the injury happened, or expressly, or tacitly assented to the rendition of the particular service by him. He must, at the time, have had the right to direct the action of the servant and to accept or reject its rendition by him." [Mound City Paint & Color Co. v. Conlon, 92 Mo. 221, l. c. 229, 4 S. W. 922.]

"In every case the conclusive test to be sought after, by which to determine whether or not the immediate actor was the servant of the defendant, is, whether the defendant reserved *control* over him as to the manner of doing the work. . . . The power to control implies the power to discharge for disobedience; and accordingly the power to *discharge* has frequently been regarded as the test by which to determine whether the relation of master and servant existed. . . . A person who, skilled in a particular employment, engages with another to do a particular job of work for a round sum, reserving to himself the right to determine by what methods he shall accomplish the work, is regarded as an independent contractor, and not as the servant or agent of the other contracting party, in the sense which makes the latter responsible for any wrong he may commit in the doing of the work." [Fink v. Missouri Furnace Co., 10 Mo. App. 61, l. c. 66; Kipp v. Oyster, 133 Mo. App. 711, l. c. 717, 114 S. W. 538; Gayle v. Missouri Car & Foundry Co., 177 Mo. 427, l. c. 448, 76 S. W. 987.]

"The right to control the work contracted for is an important test in determining whether the employee is an independent contractor or a mere servant, and it may be stated generally that if the employee is under the control of the employer he is a servant, but if in the performance of the work he is not under the control of the employer he is an independent contractor. . . . The fact that the employer may at any time terminate the performance of the work by discharging the employee is of considerable weight as tending to show that the employee is not an independent contractor. . . . The fact that an employee by his contract with his employer is bound to furnish the materials or tools with which the work shall be done affords but little light on the question of his independence, but such fact has in some cases been considered as tending to show independence. . . . The mode of payment for the work to be done is an important element to be considered in determining whether the employee is an independent contractor but is not concontrolling. . . . However, . . . the right to control the manner of doing the work is the principal consideration which determines whether the worker is an employee or an independent contractor. . . . The test of relationship is the right to control. It is not the fact of actual interference with the control but the right to interfere that makes the difference between an independent contractor and a servant or agent." [Bristol & Gale Co. v. Industrial Commission, 292 Ill. 16, l. c. 21.]

"Whether the relation between the person sought to be charged for an alleged wrong and the immediate actor by whom the alleged wrong was done, was that of master and servant, or proprietor and independent contractor, is frequently a question of fact for the jury, the solution of which depends upon a variety of circumstances." [Fink v. Missouri Furnace Co., 10 Mo. App. 61, l. c. 65; Alexander v. Star-Chronicle Pub. Co., 197 Mo. App. 601, 198 S. W. 467; Porter v. Withers Estate Co., 201 Mo. App. 27, 210 S. W. 109.]

"It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is deter-minative, but all must be considered together. Ordinarily the question is one of fact." [31 Corpus Juris 473, 474.]

"When the facts are undisputed no doubt exists that the court may declare as a matter of law whether one is an independent contractor or merely a servant,  . . . but where the facts are disputed the proper course it seems to us must be to leave it to the jury under proper instructions to say whether one was an independent contractor or a servant, accordingly as the facts are found." [Gayle v. Missouri Car & Foundry Co., 177 Mo. 427, l. c. 447, 76 S. W. 987; Kipp v. Oyster, 133 Mo. App. 711, l. c. 716, 114 S. W. 538; Thomassen v. West St. Louis Water and Light Co. (Mo. App.), 251 S. W. 450, l. c. 451.]

"If defendant claims that he is not liable because the work was being done by an independent contractor, it seems that the burden is upon him to prove such relationship." [26 Cyc. 1573; Schneider v. Maney, 242 Mo. 36, l. c. 43, 145 S. W. 823; Knoche v. Pratt, 194 Mo. App. 300, l. c. 304, 187 S. W. 578; Slayton v. West End Street Ry. Co., 174 Mass. 55, l. c. 63.]

"Where the party who has not the general burden of proof possesses positive and complete knowledge concerning the existence of facts which the party having that burden is called upon to negative, or where for any reason the evidence to prove a fact is chiefly if not entirely within the control of the adverse party, it has been held that the burden of proof, meaning the burden of evidence, is on the party who knows or has special opportunity for knowing the fact, even in criminal cases, although he is obligated to go no farther than necessity requires." [Schneider v. Maney, 242 Mo. 36, l. c. 43, 145 S. W. 823.]

"Slight circumstances are sufficient to establish a fact where the defendant is peculiarly possessed with power to disprove it and fails to adduce such evidence." [Davenport v. King Electric Co., 242 Mo. 111, l. c. 122, 145 S. W. 454.]

In the present case, Bresler, who was employed by defendant to deliver its papers to dealers, was not following or exercising a regular independent employment or occupation, in the course of which he offered his services to the public to accept orders and execute commissions for all who might employ him in a certain line of duty. He was not engaged in the work of delivering papers to dealers as an independent employment or occupation. He performed this character of work for the defendant only. Nor was he engaged in the work of hauling and delivering commodities of any character as an independent employment or occupation. For four successive years prior to the year in which the accident occurred, Bresler had delivered defendant's base-ball edition over the Manchester run during the baseball seasons at five dollars per trip, which was paid to him at the end of each week of service. In 1921, the year the accident in question occurred, Bresler was again employed to deliver the base-ball edition at the same price per trip he had previously received. He continued to do the work at this price for awhile. Some time prior to the accident defendant announced a general reduction in the salaries of its employees. Bresler's salary was reduced along with that of the other employees. His salary was reduced from $35 to $30 per week. He complained of the reduction, but accepted it, and proceeded with his work as before. He did not base his complaint, however, on the ground that defendant had no right to make the reduction under its contract with him. Within a few days after the accident out of which this suit arose, defendant discharged Bresler on account of the accident. Bresler during his employment was required to report promptly each afternoon when the base-ball edi-

tion was ready for delivery and to make immediate deliveries to all the dealers on the Manchester run. Occasionally he was required to make an earlier delivery on the Olive street run for which he received additional compensation. He was also at times required to make deliveries at Forest Park Highlands which was not on his regular run. These deliveries were made without extra compensation. The papers delivered by Bresler were wrapped in bundles by the defendant at its plant. There were attached to each bundle labels designating the run on which it was to be delivered, the dealer it was to be delivered to, and the place of delivery. There was nothing in the contract or the conduct of the work conclusively showing that the defendant surrendered the right to control Bresler in the means and methods of doing his work. Bresler, it is true, used his own conveyance, a Ford touring car, in doing his work, and kept it in repair and provided the necessary gas and oil for it, as it seems he was required to do under the contract of employment. But it does not appear that he was entitled to discard the automobile and employ other means of conveyance, and adopt other methods, in making his deliveries as he might choose.

It is manifest that in this state of the evidence the question as to whether Bresler was an independent contractor or a mere servant of the defendant was for the jury.

The defendant places much reliance upon Gall v. Detroit Journal Co., 191 Mich. 405. That case is clearly distinguishable on its facts from the case at bar. In that case Albert Rebtoy, while driving an automobile in the work of delivering newspapers for the journal company, ran against and upon the plaintiff, inflicting the injuries for which the suit was brought. The contract under which Rebtoy performed his work for the company was in writing, and contained the following provision:

"The said Rebtoy shall make such delivery and distribution according to his own means and methods of

conveyance, which shall belong to and be in the exclu-
sive charge and control of said Rebtoy, and which shall
not be subject to the control or supervision by the com-
pany excepting as to the results of said work.''

This provision of the contract was stressed by the
court, and was controlling in the decision of the case.
The court, referring to the circumstances shown in evi-
dence, to-wit, that the company had the right to desig-
nate the persons and places to whom the papers would be
delivered, that Rebtoy was paid by the week, and that he
was not a licensed drayman, said:

''All of these things might be important in deter-
mining the relation of the employer and employed in a
doubtful case, but they are not controlling in the face
of a definite contract which clearly defines the relation.''

It is obvious that the Rebtoy case affords no sup-
port for the defendant's position in this case.

Defendant insists further that the petition alleges
specific acts of negligence as the cause of plaintiff's in-
jury, and that, having done so, he is required to prove
such specific acts and cannot rely on the doctrine of
res ipsa loquitur, that he failed to prove the specific acts
of negligence alleged, and that the demurrer to the evi-
dence should have been sustained on this ground. The
petition alleges:

''That in the City of St. Louis, Missouri, on the 15th
day of September, 1921, the defendant was engaged in
delivering bundles containing copies of its newspaper,
and employed an automobile for said purpose; and, by
its servants and agents then and there in charge of the
delivery of said bundles, negligently hurled a large, heavy
bundle of newspapers from said automobile while the
same was moving westwardly on Market street in said
city, and struck the plaintiff therewith, while plaintiff
was standing upon the sidewalk of said street, thereby
causing plaintiff's face and eyes to be cut, bruised, con-
tused, lacerated, infected and inflamed; that defendant's
said servants on said occasion negligently threw said

bundle from said automobile while the automobile was in
motion, and negligently threw said bundle in an improp-
er and reckless manner, with great force, and without
looking in the direction in which they were about to throw
the same.''

Defendant urges in argument that the charge of neg-
ligence is that the bundle in question was thrown from
a moving automobile by defendant's servants in an im-
proper and reckless manner, with great force, and with-
out looking in the direction in which they were about to
throw the same, that this is a specific allegation of neg-
ligence, and that there is no proof to sustain it.

There was direct proof that the bundle was thrown
by Schrell from the automobile to the sidewalk where
plaintiff was standing, while the automobile was in mo-
tion, and that the bundle struck the plaintiff in the face
with great force. The bundle must have been thrown in
the direction of the plaintiff's face, else it would not
have struck him in the face. It must have been thrown
with great force, else it would not have struck him with
great force. The throwing of the bundle from a moving
automobile with great force in the direction of the plain-
tiff's face while he was standing on the sidewalk of a
public street, without more, was a grossly negligent act.
The act was sufficiently alleged in the petition and was
adequately proved by direct evidence without the aid
of presumptions arising under the *res ipsa loquitur* rule.
The failure of plaintiff to prove the additional specifica-
tion of negligence, to-wit, that the bundle was thrown by
defendant's servants ''without looking in the direction
in which they were about to throw the same,'' is unim-
portant. It was not essential that he prove all the speci-
fications of negligence contained in the petition. It was
only essential that he prove sufficient of them to make
out a case against the defendant.

Defendant presses upon our attention the circum-
stance that the plaintiff testified that the accident hap-
pened at 4:53 p. m., whereas Bresler testified that he

did not leave the Times Building until 5:11 p. m. Defendant says that this conclusively shows that the bundle of papers which struck the plaintiff could not have been thrown from Bresler's automobile, and that the demurrer to the evidence should have been sustained on this ground. This slight discrepancy in the testimony may well be accounted for as the result of mistake on the part of one or the other of the witnesses. The discrepancy must be regarded as of little importance in view of the other facts and circumstances in evidence tending strongly to show that the bundle which struck the plaintiff was thrown by Schrell from Bresler's automobile.

Defendant makes the further contention that Schrell, who threw the bundle of papers from the automobile and struck the plaintiff with it, was a mere volunteer for whose tortious act the defendant is in no way responsible. There is no merit in this contention. Schrell threw the bundle in Bresler's immediate presence, under his immediate supervision, with his assent, and in accordance with his wish and desire. Schrell was taken into the automobile in order that he might throw the bundles from the automobile at the places where they were to be delivered to the dealers, and when Bresler arrived at the corner where plaintiff was injured, he slowed down the automobile so that Schrell could throw the bundle from the automobile to the sidewalk. The act of Schrell was the act of Bresler. [James v. Muehlebach, 34 Mo. App. 512; Blumenfeld v. Meyer-Schmid Grocer Co., 206 Mo. App. 509, l. c. 520, 230 S. W. 132.]

Defendant assigns error upon the giving of plaintiff's instruction No. 1, on the ground that it is broader than the petition. Defendant says that the petition alleges that the bundle in question was thrown by defendant's servants and agents, whereas the instruction does not require the jury to find that Schrell was either a servant or an agent of defendant. This assignment is extremely technical. The instruction requires the jury to

find that Bresler was the servant of defendant and that the bundle was thrown by Schrell under circumstances whereby his negligent act became the act of Bresler. Clearly the allegation of the petition that the servants of defendant committed the tortious act is broad enough to cover the act of Schrell, for the act of Schrell was the act of the servant Bresler.

Defendant contends further that the instruction is broader than the pleadings and the proof in that it permits the jury to predicate liability upon the negligent driving of the automobile, whereas the petition does not allege and the evidence does not show that the automobile was driven in a negligent manner. The instruction does not predicate liability upon the negligent driving of the automobile. It does submit the question of negligence in permitting the automobile to be in motion at the time the bundle was thrown. But this is covered by the allegation that the bundle was negligently thrown while the automobile was in motion.

Defendant further objects that the instruction is faulty in that it permits the jury to find for plaintiff if Bresler in performing his work was acting in the scope of his employment for defendant, though the jury may have found that the employment of Bresler was that of an independent contractor. The objection is not well taken. The instruction distinctly requires the jury to find that Bresler was subject to the control and orders of defendant with reference to the means and manner of doing his work.

Defendant further complains of the instruction for that it fails to limit the amount of damages recoverable to the amount prayed for in the petition. The amount of damages awarded by the jury was very much less than the amount prayed for. Manifestly there is no merit in this complaint.

Defendant insists that the court committed error in permitting plaintiff's counsel to cross-examine the witness Bresler. The witness was an employee of defend-

ant, and he exhibited considerable hostility to the plaintiff in giving his testimony. We rule that the court did not abuse its discretion in permitting him to be cross-examined.

We have examined the evidence relating to the plaintiff's injury, and conclude that the amount of the damages awarded him by the jury is not such that this court ought to interfere with the award for excessiveness.

The Commissioner recommends that the judgment of the circuit court be affirmed.·

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.